# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

UNITED STATES OF AMERICA

No. 15-20200

v.

HON. LAURIE J. MICHELSON

D-1   CHAKA LeCHAR CASTRO,      18 U.S.C. § 1962(d)
      a/k/a "Chaquita," "Chacarita,"   18 U.S.C. § 1959(a)(3)
      "Mina," "Chsca,"               18 U.S.C. § 924(c)
D-2   JUAN OLAYA a/k/a "Fernando,"   18 U.S.C. § 2
      "Johnathan,"
D-3   OCTAVIUS SCOTT,
      a/k/a "Tae,"
D-4   RODNEY GRANGER,
D-5   JOHNISHA WILLIAMS,
      a/k/a "Mimi," "Nisha,"
D-7   JUSTIN JOHNSON,

## SECOND SUPERSEDING INDICTMENT

THE GRAND JURY CHARGES:

## PART I – THE RACKETEERING CONSPIRACY

## COUNT ONE

### 18 U.S.C. §1962(d) – RICO CONSPIRACY

D-1 CHAKA CASTRO
D-2 JUAN OLAYA
D-3 OCTAVIUS SCOTT
D-4 RODNEY GRANGER
D-5 JOHNISHA WILLIAMS
D-7 JUSTIN JOHNSON

1

## Background

At all times relevant to this Superseding Indictment:

1.     The defendants CHAKA CASTRO, JUAN OLAYA, OCTAVIUS SCOTT, RODNEY GRANGER, JOHNISHA WILLIAMS, Jakerya Augustus, JUSTIN JOHNSON, and others known and unknown to the Grand Jury, were members and associates of the "Castro enterprise," a criminal organization, which was engaged in, among other things, acts of violence, robbery, money laundering, and interstate transportation of stolen property, and which operated in the states of Michigan, Texas, Georgia, New York, Ohio, and elsewhere.

2.     The "Castro enterprise" was organized and led by CHAKA CASTRO, who resides in Texas.  CASTRO identified numerous robbery targets throughout the United States and then recruited and assigned enterprise members to specific identified robbery targets.  These enterprise members were organized into crews to carry out the robberies.  These robbery crews usually consisted of three to four enterprise members.

3.     The "Castro enterprise" almost exclusively targeted families of Asian or Indian ancestry for robbery.

4.     The "Castro enterprise" utilized a specific modus operandi for the robberies.  Once the enterprise members made entry into the home of

2

their intended victims, they immediately corralled the victims, including children, into one location in the home.  The members would then restrain the victims with duct tape and threats of violence.

5.　　The "Castro enterprise" members openly carried and brandished firearms in each of the robberies.  Some enterprise members also disguised their appearance with clothing and bandanas so robbery victims would have difficulty identifying them.  They wore gloves to protect against leaving trace evidence and fingerprints.  During some of the robberies, enterprise members took the additional step of attempting to disguise their voices.

6.　　The "Castro enterprise" members stole money, jewelry, and electronics in the robberies.  A portion of the stolen money, or money obtained from the sale of stolen property, was sent via Western Union or pre-paid money cards directly to CASTRO.  The group would then travel over state lines with the rest of the proceeds, a certain percentage of which the group provided to CASTRO.

7.　　It was part of the conspiracy that CHAKA CASTRO, JUAN OLAYA, OCTAVIUS SCOTT, RODNEY GRANGER, JOHNISHA WILLIAMS, Jakerya Augustus, JUSTIN JOHNSON, and others known and unknown to the Grand Jury, agreed that a conspirator would commit at

3

least two acts of racketeering activity in the conduct of the affairs of the enterprise.

## The Enterprise

8.      At all times relevant to this Count of this Superseding Indictment, there existed in the Eastern District of Michigan, and elsewhere, a criminal organization, namely the "Castro enterprise." This organization, including its leadership, members and associates, constituted an enterprise, as defined by Title 18, United States Code, Section 1961(4), that is, a group of individuals associated in fact, the activities of which affected interstate and foreign commerce, consisting of defendants, CHAKA CASTRO, JUAN OLAYA, OCTAVIUS SCOTT, RODNEY GRANGER, JOHNISHA WILLIAMS, Jakerya Augustus, JUSTIN JOHNSON, unindicted co-conspirators A, B, and C, and others known and unknown to the Grand Jury.   The enterprise constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of the enterprise.

9.      In addition to being members of the enterprise, the defendants served in various roles within the enterprise, including the following:

a.      CHAKA CASTRO was the leader and organizer of the enterprise.   She recruited new members, researched potential victims, and

4

directed the robbery crews to the specific home addresses of these targeted victims of Asian or Indian ancestry.

b.      JUAN OLAYA was the leader of the robbery crews who coordinated with CASTRO to identify potential victims and organized other enterprise members with specific tasks before, during, and after the robberies, and coordinated the movement of stolen property and laundering of robbery proceeds.

c.      OCTAVIUS SCOTT was an active participant in the enterprise's activities, including the renting of cars, surveillance, robberies, and movement of stolen property.

d.      RODNEY GRANGER was an active participant in the enterprise's activities, including robberies.

e.      JOHNISHA WILLIAMS was an active participant in the enterprise's activities, including acting as a decoy and look out during robberies.

f.      Jakerya Augustus was an active participant in the enterprise's activities, including acting as a decoy and look out during robberies.

g.      JUSTIN JOHNSON was an active participant in the enterprise's activities, including robberies.

5

## Purposes of the Enterprise

10.    The purposes of the "Castro enterprise" included, but were not limited to, the following:

a.    Enriching the leaders, members, and associates of the enterprise through among other things, acts of violence, robbery, money laundering, and the interstate transportation of stolen goods;

b.    Keeping victims in fear of the enterprise through threats of violence and actual violence; and

c.    Disguising and protecting the financial proceeds of the enterprise's racketeering activity by laundering the stolen funds and moneys received from the sale of stolen goods via wire transfer or pre-paid money cards.

## Manner and Means of the Enterprise

11.    The manner and means used by the enterprise to further the goals of the enterprise and achieve its purposes included, but were not limited to, the following:

a.    Enterprise members and associates identified families of Asian and Indian ancestry in cities and states throughout the United States;

b.     Once the victims were identified, enterprise members organized plans to rob the victims of jewelry, cash, and other goods in their homes;

c.     Enterprise members and associates conducted surveillance on the residences of identified victims to ensure that their targets resided at that address;

d.     Enterprise members and associates stole firearms, jewelry, money, and other goods from the homes of individuals by armed robbery;

e.     Enterprise members and associates used bandanas, masks and gloves to conceal their identity and limit the trace evidence left behind during the robberies;

f.     Enterprise members and associates used a driver as both a lookout during the robbery and means of escape after the robbery;

g.     Enterprise members and associates used violence, threats of violence, and weapons, including firearms, to rob the families;

h.     Enterprise members and associates often used mobile phones to communicate with one another;

i.     Enterprise members and associates traveled and transported stolen jewelry, money, and other goods across state lines and

7

made phone calls in interstate commerce to further the goals of the enterprise;

j.      Enterprise members and associates sold the stolen goods to individuals and commercial establishments in New York, Texas, and elsewhere and then split the proceeds of their unlawful activities;

k.      Enterprise members and associates laundered the proceeds to promote their unlawful activities by, among other means, using Western Union and pre-paid money cards to move the proceeds among enterprise members and associates; and

l.      Enterprise members and associates used rental vehicles and personal vehicles during the course of the robberies and surveillance operations.  Enterprise members and associates also changed vehicles during the course of the robberies and surveillance operations to avoid detection.

<u>The Racketeering Conspiracy</u>

12.    From a date unknown, but at least from in or about April 2011 and continuing to on or about December 11, 2014, both dates being approximate and inclusive, within the Eastern District of Michigan and elsewhere, defendants,

CHAKA CASTRO
JUAN OLAYA
OCTAVIUS SCOTT
RODNEY GRANGER
JOHNISHA WILLIAMS
JAKERYA AUGUSTUS
JUSTIN JOHNSON

and others known and unknown to the grand jury, being persons employed by and associated with the "Castro enterprise," which enterprise is described more fully above, which was engaged in, and the activities of which affected, interstate and foreign commerce, did knowingly, willfully, and unlawfully combine, conspire, confederate, and agree with one another to violate Title 18, United States Code, Section 1962(c), that is, being persons associated with the enterprise, as more fully described hereinafter, the defendants did agree to conduct and participate, directly and indirectly, in the conduct of the affairs of said enterprise through a pattern of racketeering activity, as defined in Title 18, United States Code, Section 1961(1) and (5), consisting of:

a.    Multiple threats and acts involving:

(1)    Robbery, in violation of Michigan Compiled Laws, Sections 750.529, 750.530, 750.88, 750.89, 750.157a(a), 750.92, and 767.39,Texas Penal Code, Sections 29.02, 29.03, 15.01, 15.02, 7.01;

9

Georgia Code Annotated, Sections 16-8-41, 16-5-21, 16-4-1, 16-4-8, 16-2-21, and New York Penal Code Sections 160.15, 110.00, 105.15, 20.00.

     b.     Multiple acts indictable under the following provisions of federal law:

     (1)     18 U.S.C. § 1956(a)(1)(A)(i) (laundering of monetary instruments);

     (2)     18 U.S.C. § 2314 (transportation of stolen goods or other property); and

     (3) 18 U.S.C. § 2315 (sale or receipt of stolen goods or other property).

## Overt Acts

In furtherance of the conspiracy, and to affect the object and purposes thereof, the defendants, and others known and unknown to the grand jury, committed various overt acts, including but not limited to the following

     (1)     On or about May 9, 2011, several hundred thousands of dollars of jewelry and other valuables were taken from Family O.

     (2) On or about May 12, 2011, CHAKA CASTRO was found in Tennessee in possession of jewelry that had been reported stolen on May 9, 2011 from Family O's residence on Twickenham Drive, Beachwood,

Ohio. CHAKA CASTRO also possessed a notebook that contained handwritten lists of addresses, including addresses in Georgia.

(3)    On or about May 9, 2011, CHAKA CASTRO sent money via Western Union to unindicted co-conspirator C.

(4)    On or about April 27, 2011, individuals, unknown to the grand jury, entered the home of Family P located on Abbotts Oak Way in Duluth, Georgia and took valuables from Family P's residence.

(5)    On or about May 7, 2011, individuals, unknown to the grand jury, entered the home of Family Q located on Anniston Court in Marietta, Georgia.

(6)    On or about May 7, 2011, individuals, unknown to the grand jury, bound Family Q and stole jewelry and valuables from Family Q.

(7)    On or about May 27, 2011, individuals, unknown to the grand jury, entered the home of Family R located on Cameron Creek Way in Marietta, Georgia.

(8)    On or about May 27, 2011, individuals, unknown to the grand jury, took jewelry and valuables from the home of Family R.

(9)    In or about May and June of 2011, CHAKA CASTRO sent to unindicted co-conspirator A addresses in Marietta and Duluth, Georgia, including the addresses for the homes of Family Q and Family R.

11

(10) On or about June 10, 2011, unindicted co-conspirator A entered the residence of Family S on Grassmeade Way, in Snellville, Georgia.

(11) Unindicted co-conspirator A left his cell phone in Family S's residence in Snellville, Georgia.

(12) During May 2011, CHAKA CASTRO made multiple calls to unindicted co-conspirators A and B.

(13) On or about September 28, 2011, individuals, unknown to the grand jury entered the residence of Family T on Nash Lee Court in Lilburn, Georgia and fled the residence in a Honda Civic with license plate number BTI4106.

(14) On or about December 1, 2011, CHAKA CASTRO was stopped by Georgia law enforcement driving a Honda Civic, license plate number BTI4106, on and in the vicinity of Collins Lake Way in Mableton, Georgia.

(15) On or about December 27, 2011, unindicted co-conspirators A, B, and other individuals unknown to the grand jury, entered the Family U's residence on Collins Lake Way in Mableton, Georgia.

(16) On or about December 27, 2011, CHAKA CASTRO sent money via Western Union to unindicted co-conspirator C.

(17)  On or about December 27, 2011, unindicted co-conspirators A, B, and other individuals, unknown to the grand jury, held Family U at gunpoint and bound them.

(18)  On or about December 27, 2011, unindicted co-conspirators A, B, and other individuals, unknown to the grand jury, stole cash, jewelry, and electronics from Family U.

(19)  On or about December 28, 2011, unindicted co-conspirators A, B, and individuals unknown to the grand jury, entered the residence of Family V on Windsor Drive in Roswell, Georgia.

(20)  On or about December 28, 2011, unindicted co-conspirators A, B, and other individuals, unknown to the grand jury, bound and held Family V at gun point.

(21)  In or about 2011, CHAKA CASTRO and unindicted co-conspirators A and B sold jewelry stolen from various home invasions to a shop in the Atlanta area of Georgia.

(22)  In or about April 2014, CHAKA CASTRO obtained a subscription to Publicdata.com.

(23)  In or about July 2014, CHAKA CASTRO had a discussion with OCTAVIUS SCOTT and JUSTIN JOHNSON in order to interview both for entry into the "Castro enterprise."

13

(24) On or about August 17, 2014, JUAN OLAYA, OCTAVIUS SCOTT, and JUSTIN JOHNSON entered the residence of Family K on Wellsley Lane in Dallas, Georgia.

(25) On or about August 17, 2014, JUAN OLAYA, OCTAVIUS SCOTT, and JUSTIN JOHNSON held Family K at gunpoint and bound Family K with duct tape.

(26) On or about August 17, 2014, JUAN OLAYA, OCTAVIUS SCOTT, and JUSTIN JOHNSON stole cash, jewelry, and electronics from Family K.

(27) On or about August 18, 2014, JUSTIN JOHNSON acted as a lookout for JUAN OLAYA and OCTAVIUS SCOTT outside the residence of Family L on Barberry Drive in Milton, Georgia.

(28) On or about August 18, 2014, JUAN OLAYA and OCTAVIUS SCOTT entered the residence of Family L on Barberry Drive in Milton, Georgia.

(29) On or about August 18, 2014, JUAN OLAYA, and OCTAVIUS SCOTT held victim L-1 at gun point and bound victim L-1 with duct tape.

(30) On or about August 18, 2014, JUAN OLAYA, OCTAVIUS SCOTT, and JUSTIN JOHNSON took money, jewelry, and electronics from Family L.

14

(31) On or about August 19, 2014, JUSTIN JOHNSON acted as a lookout for JUAN OLAYA and OCTAVIUS SCOTT outside the home of Family M.

(32) On or about August 19, 2014, JUAN OLAYA and OCTAVIUS SCOTT forcibly entered the residence of Family M on Lakepoint Lane in Fayetteville, Georgia.

(33) On or about August 19, 2014, JUAN OLAYA and OCTAVIUS SCOTT, assaulted victim M-1, held the family at gunpoint, and bound them with duct tape.

(34) On or about August 19, 2014, JUAN OLAYA, OCTAVIUS SCOTT, and JUSTIN JOHNSON took money, electronics, and jewelry away from Family M's residence located on Lakepoint Lane in Fayetteville, Georgia.

(35) On or about August 18, 2014, CHAKA CASTRO sent money to unindicted co-conspirator C.

(36) In or about October 2014, CHAKA CASTRO provided addresses of potential robbery targets to JUAN OLAYA.

(37) On or about October 29, 2014, JUSTIN JOHNSON sent a Western Union money gram to CHAKA CASTRO.

15

(38) On or about October 31, 2014, JUAN OLAYA, OCTAVIUS SCOTT, JUSTIN JOHNSON, and JOHNISHA WILLIAMS forcibly entered the home of Family N located on Beach Street in Nassau County, New York.

(39) On or about October 31, 2014, JUAN OLAYA, OCTAVIUS SCOTT, JUSTIN JOHNSON, and JOHNISHA WILLIAMS held Family N at gun point and bound them with duct tape.

(40) On or about October 31, 2014, JUAN OLAYA, OCTAVIUS SCOTT, JUSTIN JOHNSON, and JOHNISHA WILLIAMS stole cash, jewelry, and electronics from Family N.

(41) On or about October 31, 2014, JUSTIN JOHNSON sent a Western Union money gram to CHAKA CASTRO.

(42) On or about November 24, 2014, OCTAVIUS SCOTT and Jakerya Augustus rented a vehicle from Enterprise Rental Company in Ypsilanti, Michigan.

(43) On or about November 23, 2014 through November 26, 2014, JUAN OLAYA, OCTAVIUS SCOTT, and Jakerya Augustus conducted surveillance on potential robbery targets.

(44) On or about November 24, 2014, CHAKA CASTRO provided JUAN OLAYA with a list of addresses for the crew to select from for their robbery targets.

(45) On or about November 24, 2014, JUAN OLAYA and OCTAVIUS SCOTT broke a glass window and forcibly entered the residence of Family A located on Trillium Woods Drive in Ann Arbor, Michigan.

(46) On or about November 24, 2014, JUAN OLAYA and OCTAVIUS SCOTT forced victims A-1 and A-2 at gunpoint into their bathroom where they bound victims A-1 and A-2 with duct tape.

(47) On or about November 24, 2014, JUAN OLAYA, OCTAVIUS SCOTT and Jakerya Augustus took money, electronics, and jewelry away from Family A's residence located on Trillium Woods Drive in Ann Arbor, Michigan.

(48) On or about November 24, 2014, Jakerya Augustus acted as a lookout for JUAN OLAYA and OCTAVIUS SCOTT outside of Family A's residence on Trillium Woods Drive in Ann Arbor, Michigan.

(49) On or about November 25, 2014, Jakerya Augustus knocked on the front door of Family B's residence on Plainview Street in Ypsilanti, Michigan.

(50)  On or about November 25, 2014, JUAN OLAYA, Jakerya Augustus, and OCTAVIUS SCOTT entered Family B's residence located on Plainview Street in Ypsilanti, Michigan.

(51)  On or about November 25, 2014, JUAN OLAYA and OCTAVIUS SCOTT held victim B-1 at gunpoint and assaulted victim B-2 before binding both men with duct tape.

(52)  On or about November 25, 2014, JUAN OLAYA, OCTAVIUS SCOTT, and Jakerya Augustus took money, firearms, electronics, and other items away from Family B's residence located at Plainview Street in Ypsilanti, Michigan.

(53)  On or about November 26, 2014, Jakerya Augustus knocked on the front door of Family C's residence on Lothrop Road in Canton, Michigan. (54) On or about November 26, 2014, JUAN OLAYA and OCTAVIUS SCOTT entered Family C's residence on Lothrop Road in Canton, Michigan.

(55)  JUAN OLAYA and OCTAVIUS SCOTT assaulted victim C-1 and held victims C-1 and C-2 at gunpoint in the laundry room where victims C-1 and C-2 were bound with duct tape.

(56)  On or about November 26, 2014, JUAN OLAYA, OCTAVIUS SCOTT, and Jakerya Augustus took money, jewelry, and electronics away from Family C's residence located on Lothrop Road in Canton, Michigan.

(57)  On or about November 26, 2014, Jakerya Augustus knocked on the front door of Family D's residence located on Arlington Boulevard in Ann Arbor, Michigan.

(58)  On or about November 26, 2014, JUAN OLAYA, OCTAVIUS SCOTT, and Jakerya Augustus entered Family D's residence on Arlington Boulevard in Ann Arbor, Michigan.

(59)  On or about November 26, 2014, JUAN OLAYA and OCTAVIUS SCOTT forced Family D at gunpoint into the basement where they bound the entire family, including the children, with duct tape.

(60)  On or about November 26, 2014, JUAN OLAYA, OCTAVIUS SCOTT and Jakerya Augustus took money, including foreign currency, jewelry, electronics, and a young boy's piggybank away from Family D's residence on Arlington Boulevard in Ann Arbor, Michigan.

(61) On or about November 26, 2014, CHAKA CASTRO sent money via Western Union to unindicted co-conspirator C.

(62)  On or about November 28, 2014, CHAKA CASTRO discussed with JUAN OLAYA the stolen items and jewelry from a robbery the crew had committed within the Eastern District of Michigan.

(63)  On or about December 3, 2014, OCTAVIUS SCOTT returned a rental vehicle to an Enterprise location in Houston, Texas.

(64)  On or about December 5, 2014, CHAKA CASTRO sent JUAN OLAYA a list of addresses in Texas.

(65)  On or about December 5, 2014, CHAKA CASTRO, JUAN OLAYA, OCTAVIUS SCOTT, and JOHNISHA WILLIAMS drove from Houston, Texas to the Dallas/Ft. Worth area for the purpose of conducting robberies.

(66)  On or about December 5, 2014, JUAN OLAYA, OCTAVIUS SCOTT, and JOHNISHA WILLIAMS entered Family E's residence on Abbey Court in Coppell, Texas.

(67)  On or about December 5, 2014, JUAN OLAYA and OCTAVIUS SCOTT held Family E at gun point and bound them with duct tape.

(68)  On or about December 5, 2014, JUAN OLAYA, OCTAVIUS SCOTT, and JOHNISHA WILLIAMS took money, purses, jewelry, electronics, and other items away from Family E's residence located on Abbey Court, Coppell, Texas.

(69)  On or about December 5, 2014, JUAN OLAYA, OCTAVIUS SCOTT and JOHNISHA WILLIAMS gave proceeds from the robbery to CHAKA CASTRO.

(70)  On or about December 5, 2014 through December 7, 2014, CHAKA CASTRO sent addresses in the Dallas/Ft. Worth, Texas area to JUAN OLAYA.

(71)  On or about December 6, 2014, JUAN OLAYA, RODNEY GRANGER, and OCTAVIUS SCOTT entered the garage of Family F's residence on Rio Grande Drive in Allen, Texas.

(72)  On or about December 6, 2014, victim F-1 was dragged into his home at gunpoint, thrown to the floor, and bound with duct tape.  Two other family members were also dragged next to victim F-1 and bound with duct tape.

(73)  On or about December 6, 2014, JUAN OLAYA, OCTAVIUS SCOTT, RODNEY GRANGER, and JOHNISHA WILLIAMS took money, jewelry, and electronics from Family F's residence located on Rio Grande Drive, Allen, Texas.

(74)  On or about December 6, 2014, JOHNISHA WILLIAMS acted as the lookout for JUAN OLAYA, RODNEY GRANGER, and OCTAVIUS

SCOTT while they robbed Family F's residence located on Rio Grande Drive in Allen, Texas.

(75) On or about December 6, 2014, JUAN OLAYA, RODNEY GRANGER, and OCTAVIUS SCOTT entered Family G's residence on Phillip Drive in Allen, Texas through a door they broke to gain access.

(76) On or about December 6, 2014, JUAN OLAYA, OCTAVIUS SCOTT, RODNEY GRANGER, and JOHNISHA WILLIAMS took money, jewelry, and electronics away from Family G's residence on Phillip Drive, Allen, Texas.

(77) On or about December 6, 2014, JOHNISHA WILLIAMS acted as a look out and getaway driver for JUAN OLAYA, RODNEY GRANGER, and OCTAVIUS SCOTT as they robbed Family G's residence on Phillip Drive in Allen, Texas.

(78) On or about December 6, 2014, JOHNISHA WILLIAMS knocked on the front door Family H's residence on Wrotham Drive in Allen, Texas.

(79) On or about December 6, 2014, when victim H-1 answered the door, JUAN OLAYA, RODNEY GRANGER, and OCTAVIUS SCOTT entered Family H's residence on Wrotham Drive in Allen, Texas, held the Family H at gun point, and bound Family H with duct tape.

22

(80) On or about December 6, 2014, JUAN OLAYA, RODNEY GRANGER, and OCTAVIUS SCOTT took jewelry, electronics, and other items away from Family H's residence on Wrotham Drive in Allen, Texas.

(81) On or about December 6, 2014, JUAN OLAYA, OCTAVIUS SCOTT, RODNEY GRANGER, and JOHNISHA WILLIAMS returned proceeds from the robberies to CHAKA CASTRO.

(82) On or about December 6, 2014, CHAKA CASTRO sent money via Western Union to unindicted co-conspirator C.

(83) On or about December 7, 2014, CHAKA CASTRO provided JUAN OLAYA with additional addresses in the Dallas/Ft. Worth area of Texas.

(84) On or about December 7, 2014, JOHNISHA WILLIAMS acted as a lookout for JUAN OLAYA, RODNEY GRANGER, and OCTAVIUS SCOTT at Family I's residence located on Loch Meadow Court, Southlake, Texas.

(85) On or about December 7, 2014, JUAN OLAYA, RODNEY GRANGER, and OCTAVIUS SCOTT took jewelry, electronics, and other items away from Family I's residence on Loch Meadow Court in Southlake, Texas.

(86) On or about December 7, 2014, JOHNISHA WILLIAMS knocked on the front door of Family J's residence on Suncrest Drive in Flower Mound, Texas.

(87) On or about December 7, 2014, JUAN OLAYA, RODNEY GRANGER, and OCTAVIUS SCOTT entered Family J's residence on Suncrest Drive in Flower Mound, Texas.

(88) On or about December 7, 2014, JUAN OLAYA, RODNEY GRANGER, and OCTAVIUS SCOTT assaulted victim J-1, held the family at gunpoint, and bound them with duct tape.

(89) On or about December 7, 2014, JUAN OLAYA, RODNEY GRANGER, and OCTAVIUS SCOTT took jewelry away from Family J's residence on Suncrest Drive in Flower Mound, Texas.

(90) On or about December 7, 2014, JOHNISHA WILLIAMS, while acting as a lookout, communicated to JUAN OLAYA, OCTAVIUS SCOTT, and RODNEY GRANGER that law enforcement was responding to Family J's residence on Suncrest Drive in Flower Mound, Texas.

(91) On or about December 7, 2014, JUAN OLAYA, RODNEY GRANGER, and OCTAVIUS SCOTT assaulted J.V. and forced him out of his vehicle at a residence on Sunswept Terrace in Flower Mound, Texas.

(92) On or about December 7, 2014, JUAN OLAYA, RODNEY GRANGER, and OCTAVIUS SCOTT stole a Nissan Versa from J.V.

All in violation of Title 18, United States Code, Section 1962(d).

<u>Notice of Acts with Enhanced Sentencing</u>

Between in or about April 2014 through on or about December 11, 2014, in the Eastern District of Michigan, and elsewhere, enterprise members CHAKA CASTRO, JUAN OLAYA, OCTAVIUS SCOTT, RODNEY GRANGER, JOHNISHA WILLIAMS and Jakerya Augustus, aided and abetted by each other and by others known and unknown to the grand jury, engaged in conduct as proscribed in Michigan Compiled Law Section 750.529, that is, in the course of committing a larceny of any money and property that may be the subject of larceny did, in the course of engaging in that conduct possess a dangerous weapon, and an article used and fashioned in a manner to lead any person present to reasonably believe the article was a dangerous weapon, and represented orally or otherwise that he or she was in possession of a dangerous weapon, all in violation of Michigan Compiled Laws, Sections 750.529 and 750.530 and engaged in conduct as proscribed in Michigan Compiled Law Section 750.89, that is, being armed with a dangerous weapon, and any article used and fashioned in a manner to lead a person so assaulted reasonably to believe it to be a

25

dangerous weapon, did assault another with intent to rob and steal, all in violation of Michigan Compiled Laws, Section 750.89.

Between in or about April 2011 through on or about December 11, 2014, in the Eastern District of Michigan, and elsewhere, enterprise members CHAKA CASTRO, JUAN OLAYA, OCTAVIUS SCOTT, and JUSTIN JOHNSON, aided and abetted by each other and by others known and unknown to the grand jury, engaged in conduct as proscribed in Georgia Code Annotated Section 16-8-41, that is, with the intent to commit theft, he or she takes property of another from the person and the immediate presence of another by use of an offensive weapon, and any replica, article, and device having the appearance of a weapon, all in violation of Georgia Code Annotated, Section 16-8-41.

## COUNT TWO

18 U.S.C. §§ 1959(a)(3); 2 - *Assault with a Dangerous Weapon in Aid of Racketeering*

D-1 CHAKA CASTRO
D-2 JUAN OLAYA
D-3 OCTAVIUS SCOTT

1.    At all times relevant to this Superseding Indictment, there existed an enterprise, the "Castro enterprise," as more fully described in Paragraphs One through Seven and Nine through Eleven of this Indictment, which are re-alleged and incorporated by reference as though

26

set forth fully herein. The leadership, members, and associates of the enterprise constituted an enterprise as defined in Title 18, United States Code, Section 1959(b)(2), that is, a group of individuals associated in fact that was engaged in, and the activities of which affected, interstate and foreign commerce. The enterprise constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of the enterprise.

2.      At all times relevant to this Superseding Indictment, the above-described enterprise, the "Castro enterprise," through its members and associates, engaged in racketeering activity as defined in Title 18, United States Code, Section 1959(b)(1) and 1961 (1), namely,

a. Multiple threats and acts involving:

(1)      Robbery, in violation of Michigan Compiled Laws, Sections 750.529, 750.530, 750.88, 750.89, 750.157a(a), 750.92, and 767.39 and Texas Penal Code, Sections 29.02, 29.03, 15.01, 15.02, 7.01; Georgia Code Annotated, Sections 16-8-41, 16-5-21, 16-4-1, 16-4-8, 16-2-21, and New York Penal Code Sections 160.15, 110.00, 105.15, and 20.00.

27

   b.  Multiple acts indictable under the following provisions of federal law:

     (1)  18 U.S.C. § 1956 (laundering of monetary instruments);

     (2)  18 U.S.C. § 2314 (transportation of stolen goods or other property); and

     (3)  18 U.S.C. § 2315 (sale or receipt of stolen goods or other property).

  3.  On or about November 24, 2014, in the Eastern District of Michigan, defendants, CHAKA CASTRO, JUAN OLAYA, OCTAVIUS SCOTT, and Jakerya Augustus, aided and abetted each other and others known and unknown to the Grand Jury, did, for the purpose of gaining entrance to and maintaining and increasing position within the "Castro enterprise," an enterprise engaged in racketeering activity, knowingly and unlawfully assault victims A-1 and A-2, with a dangerous weapon, in violation of Michigan Compiled Laws, Section 750.82 and 767.39.

  All in violation of 18 U.S.C. §§ 1959(a)(3) and 2.

## COUNT THREE

18 U.S.C. § 924(c) – *Use and Carry of a Firearm During, and in Relation to, a Crime of Violence*

D-1 CHAKA CASTRO
D-2 JUAN OLAYA
D-3 OCTAVIUS SCOTT

On or about November 24, 2014, in the Eastern District of Michigan and elsewhere, defendants, CHAKA CASTRO, JUAN OLAYA, OCTAVIUS SCOTT, and Jakerya Augustus, did aid and abet each other in knowingly, intentionally, and unlawfully using and carrying a firearm during and in relation to a crime of violence for which they may be prosecuted in a court of the United States, that is, assault with a dangerous weapon in aid of racketeering as alleged in Count Two of this Superseding Indictment, and said firearm was brandished, in violation of Title 18, United States Code, Sections 924(c) and 2.

## COUNT FOUR

18 U.S.C. §§ 1959(a)(3); 2 - *Assault with a Dangerous Weapon in Aid of Racketeering*

D-1 CHAKA CASTRO
D-2 JUAN OLAYA
D-3 OCTAVIUS SCOTT

1.      Paragraphs One and Two of Count Two are re-alleged herein as if fully incorporated in this Count.

29

2.     On or about November 25, 2014, in the Eastern District of Michigan, defendants, CHAKA CASTRO, JUAN OLAYA, OCTAVIUS SCOTT, and Jakerya Augustus, aided and abetted each other and others known and unknown to the Grand Jury, did, for the purpose of gaining entrance to and maintaining and increasing position within the "Castro enterprise," an enterprise engaged in racketeering activity, knowingly and unlawfully assault victims B-1 and B-2, with a dangerous weapon, in violation of Michigan Compiled Laws, Section 750.82 and 767.39.

All in violation of 18 U.S.C. §§ 1959(a)(3) and 2.

## COUNT FIVE

18 U.S.C. § 924(c) – *Use and Carry of a Firearm During, and in Relation to, a Crime of Violence*

D-1 CHAKA CASTRO
D-2 JUAN OLAYA
D-3 OCTAVIUS SCOTT

On or about November 25, 2014, in the Eastern District of Michigan and elsewhere, defendants, CHAKA CASTRO, JUAN OLAYA, OCTAVIUS SCOTT, and Jakerya Augustus, did aid and abet each other in knowingly, intentionally, and unlawfully using and carrying firearms during and in relation to a crime of violence for which they may be prosecuted in a court of the United States, that is, assault with a dangerous weapon in aid of racketeering as alleged in Count Four of this Indictment, said firearm was

30

brandished, in violation of Title 18, United States Code, Sections 924(c) and 2.

## COUNT SIX

18 U.S.C. §§ 1959(a)(3); 2 - *Assault with a Dangerous Weapon in Aid of Racketeering*

D-1 CHAKA CASTRO
D-2 JUAN OLAYA
D-3 OCTAVIUS SCOTT

1.    Paragraphs One and Two of Count Two are re-alleged herein as if fully incorporated in this Count.

2.    On or about November 26, 2014, in the Eastern District of Michigan, defendants, CHAKA CASTRO, JUAN OLAYA, OCTAVIUS SCOTT, and Jakerya Augustus, aided and abetted each other and others known and unknown to the Grand Jury, did, for the purpose of gaining entrance to and maintaining and increasing position within the "Castro enterprise," an enterprise engaged in racketeering activity, knowingly and unlawfully assault victims C-1 and C-2, with a dangerous weapon, in violation of Michigan Compiled Laws, Section 750.82 and 767.39.

All in violation of 18 U.S.C. §§ 1959(a)(3) and 2.

## COUNT SEVEN

18 U.S.C. § 924(c) – *Use and Carry of a Firearm During, and in Relation to, a Crime of Violence*

D-1 CHAKA CASTRO
D-2 JUAN OLAYA
D-3 OCTAVIUS SCOTT

On or about November 26, 2014, in the Eastern District of Michigan and elsewhere, defendants, CHAKA CASTRO, JUAN OLAYA, OCTAVIUS SCOTT, and Jakerya Augustus, did aid and abet each other in knowingly, intentionally, and unlawfully using and carrying firearms during and in relation to a crime of violence for which they may be prosecuted in a court of the United States, that is, assault with a dangerous weapon in aid of racketeering as alleged in Count Six of this Indictment, in violation of Title 18, United States Code, Sections 924(c) and 2.

## COUNT EIGHT

18 U.S.C. §§ 1959(a)(3); 2 - *Assault with a Dangerous Weapon in Aid of Racketeering*

D-1 CHAKA CASTRO
D-2 JUAN OLAYA
D-3 OCTAVIUS SCOTT

1.     Paragraphs One and Two of Count Two are re-alleged herein as if fully incorporated in this Count.

2.     On or about November 26, 2014, in the Eastern District of Michigan, defendants, CHAKA CASTRO, JUAN OLAYA, OCTAVIUS SCOTT, and Jakerya Augustus, aided and abetted each other and others known and unknown to the Grand Jury, did, for the purpose of gaining entrance to and maintaining and increasing position within the "Castro enterprise," an enterprise engaged in racketeering activity, knowingly and unlawfully assault multiple members of Family D, with a dangerous weapon, in violation of Michigan Compiled Laws, Section 750.82 and 767.39.

All in violation of 18 U.S.C. §§ 1959(a)(3) and 2.

## COUNT NINE

18 U.S.C. § 924(c) – *Use and Carry of a Firearm During, and in Relation to, a Crime of Violence*

D-1 CHAKA CASTRO
D-2 JUAN OLAYA
D-3 OCTAVIUS SCOTT

On or about November 26, 2014, in the Eastern District of Michigan and elsewhere, defendants, CHAKA CASTRO, JUAN OLAYA, OCTAVIUS SCOTT, and Jakerya Augustus, did aid and abet each other in knowingly, intentionally, and unlawfully using and carrying firearms during and in relation to a crime of violence for which they may be prosecuted in a court

of the United States, that is, assault with a dangerous weapon in aid of racketeering as alleged in Count Eight of this Indictment, in violation of Title 18, United States Code, Sections 924(c) and 2.

THIS IS A TRUE BILL.

/s/ Grand Jury Foreperson
GRAND JURY FOREPERSON

Dated: December 16, 2015

BARBARA L. McQUADE
UNITED STATES ATTORNEY

/s/ Christopher Graveline
CHRISTOPHER GRAVELINE
Assistant U.S. Attorney

/s/ Douglas C. Salzenstein
DOUGLAS C. SALZENSTEIN
Assistant U.S. Attorney

/s/ James M. Trusty
JAMES M. TRUSTY
CHIEF, Organized Crime and Gang Section
U.S. Department of Justice

/s/ Kelly Pearson
KELLY PEARSON
Trial Attorney, Organized Crime and Gang Section
U.S. Department of Justice

34

| United States District Court<br>Eastern District of Michigan | Criminal Case Cover Sheet | Case Number<br>15-20200 |
|---|---|---|

NOTE: It is the responsibility of the Assistant U.S. Attorney signing this form to complete it accurately in all respects.

## Reassignment/Recusal Information This matter was opened in the USAO prior to August 15, 2008   [ ]

| Companion Case Information | Companion Case Number: |
|---|---|
| This may be a companion case based upon LCrR 57.10 (b)(4)¹: | Judge Assigned: |
| ☐ Yes     ☐ No | AUSA's Initials: _DCS_ |

**Case Title:** USA v. _Chaka Castro, et al._

**County where offense occurred :** _Washtenaw County and Elsewhere_

**Check One:**   ☒ **Felony**       ☐ **Misdemeanor**       ☐ **Petty**

_____Indictment/_____Information --- no prior complaint.
_____Indictment/_____Information --- based upon prior complaint [Case number:                    ]
_✓__Indictment/_____Information --- based upon LCrR 57.10 (d) *[Complete Superseding section below]*.

## Superseding Case Information

**Superseding to Case No:** _15-cr-20200_          **Judge:** _Michelson_

☐ Original case was terminated; no additional charges or defendants.
☒ ~~Corrects errors~~; no additional charges or defendants. - *expand RICO conspiracy period*
☐ Involves, for plea purposes, different charges or adds counts.
☐ Embraces same subject matter but adds the additional defendants or charges below:

| **Defendant name** | **Charges** | **Prior Complaint (if applicable)** |
|---|---|---|

**Please take notice that the below listed Assistant United States Attorney is the attorney of record for the above captioned case.**

December 16, 2015
_____
Date

Douglas C. Salzenstein
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, MI 48226-3277
Phone: 313-226-9196
Fax:    313-226-3265
E-Mail address: Doug.Salzenstein@usdoj.gov
Attorney Bar #: P59288

¹ Companion cases are matters in which it appears that (1) substantially similar evidence will be offered at trial, (2) the same or related parties are present, and the cases arise out of the same transaction or occurrence. Cases may be companion cases even though one of them may have already been terminated.                                                    04/13