**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**



UNITED STATES OF AMERICA,

No. 15-20200

     Plaintiff,

HON. LAURIE J. MICHELSON

-vs-

D-7 JUSTIN JOHNSON

    Defendant.

**OFFENSES:**
Count One: 18 U.S.C. § 1962(d)
(RICO Conspiracy)

**STATUTORY MAXIMUM/MANDATORY**
**MINIMUM PENALTIES:**
Count One: up to life in prison

**STATUTORY MAXIMUM FINE:**
$250,000

**STATUTORY SUPERVISED RELEASE:**
up to five (5) years

---

# Rule 11 Plea Agreement

---

Pursuant to Rule 11 of the Federal Rules of Criminal Procedure, defendant

JUSTIN JOHNSON and the government agree as follows:

1

1. **GUILTY PLEA**

   A. **Count of Conviction**

   Defendant will enter a plea of guilty to **Count One** of the Second Superseding Indictment, which charges the defendant with RICO conspiracy, in violation of 18 U.S.C. § 1962(d).

   B. **Elements of the Offense**

   The elements of **Count One**, RICO Conspiracy, are as follows:

   1. An enterprise, as that term is defined in 18 U.S.C. § 1961(4), and as identified in the Second Superseding Indictment as the Castro enterprise existed in the Eastern District of Michigan and elsewhere;

   2. The enterprise engaged in, or had some effect on, interstate commerce;

   3. The defendant was associated with the enterprise;

   4. That no later than April 2011 through December 11, 2014, two or more persons reached an agreement or came to an understanding to conduct or participate in the affairs of the enterprise, directly or indirectly, through a pattern of racketeering activity; and

   5. The defendant voluntarily and intentionally joined in the agreement or understanding, either at the time it was first reached or at some later time while it was still in existence, and at the time the defendant joined in the agreement or understanding, she specifically intended to otherwise participate in the affairs of the enterprise.

2

**C.** **Factual Basis for Guilty Plea**

The following facts are a sufficient and accurate basis for defendant's guilty plea:

That, in the Eastern District of Michigan and elsewhere, beginning on a date unknown, but starting no later than April 2011 and continuing through December 11, 2014, defendant, his co-defendants (Chaka Castro, Juan Olaya, Octavius Scott, Johnisha Williams, Rodney Granger, and Jakeyra Augustus) and others were members of an enterprise, specifically the "Castro enterprise" as that organization is described in the second superseding indictment, that engaged in racketeering activity, specifically robberies, interstate transportation of stolen goods, and money laundering.

Each member of the enterprise had specific tasks. Chaka Castro, a resident of Houston, Texas, was the leader who recruited and organized individuals from the Houston, Texas area into crews that would travel across the United States committing armed home invasions and burglaries. Castro exclusively targeted families of Indian and Asian ancestry, having identified the target families through online Internet-based research. Co-defendant Juan Olaya acted as a "road boss" or leader of one of the robbery crews. At Castro's direction, Olaya and the crew would

3

travel from the Houston area to the robbery location, usually in a vehicle rented by a co-conspirator. Once they arrived, Olaya would have a co-conspirator rent a hotel room for the crew. Target addresses (*i.e.*, "hit list") were sent by Castro (via text or some other Internet-based messaging system) to Olaya.

After receiving the "hit list," Olaya and his crew would then drive to one or more of the addresses identified by Castro in order to conduct surveillance. Based on this surveillance, Olaya would decide if the location was an appropriate target and how the crew would gain entry into the home. Castro and Olaya preferred homes that were occupied at the time of entry—alarms were likely to be turned off and the occupants could be questioned (under the threat of harm) as to the location of cash, jewelry, gold, electronics, and other valuables. Olaya also instructed the crew members that they were to wear dark clothing, gloves and bandanas covering their face when entering the target residence.

The crews generally made entry into the home by one of three methods: (a) opening an unlocked window or door; (b) breaking the glass of a locked window or door; or (c) most commonly, using a younger looking female (Johnisha Williams or Jakeyra Augustus) to knock on the front door, allowing other crew members (Olaya, Scott, Rodney Granger, and/or the defendant), who were hiding on either side of the

door, to force entry once the door was opened. Once in the home, Olaya, the defendant, and other crew members would gain control of the occupants by pointing loaded weapons directly at them and, in some circumstances, physically assaulting them. The victims were then corralled into one location, bound with duct tape (both hands and feet) and questioned, under the threat of violence, as to the location of jewelry, cash, and other valuables in the home. Olaya would then ransack the home in search of valuables to steal. While all this was happening, the younger looking female or other co-conspirator would wait outside and act as a lookout, communicating constantly, via cellphone, with a co-conspirator who was in the home.

Olaya and the crew would steal money, jewelry, gold, personal property, and electronics from the homes. Later, Olaya would sell some of the stolen items at pawn shops and, thereafter, have a portion of the proceeds wired, via Western Union or Money Gram, to Castro. Other stolen items were transported across state lines so that they could be given to Castro in Houston (or pawned in different states).

The defendant agrees that the Castro enterprise comprised an enterprise, as that term is defined in 18 U.S.C. § 1961(4), in that they are a group of individuals associated in fact with activities which affect interstate commerce.

Specific instances of the Castro enterprise's criminal activity include the following:

In mid-August 2014, Olaya, defendant, Scott, and a third individual drove from Houston, Texas to Georgia in co-defendant Scott's car. Upon arrival, Olaya had Scott rent both a vehicle and a hotel room. Castro texted Olaya a "hit list" of potential robbery targets. Then, on August 17, 2014, Olaya, defendant, and Scott traveled to Dallas, Georgia and entered the residence of a family of Indian ancestry (6 adults and one infant child were present). Olaya, defendant, and Scott held the family at gunpoint (using two loaded firearms), bound the family with duct tape, and stole cash, jewelry, and electronics from the home. Similarly, on August 18 and August 19, 2014, Olaya and Scott entered two more residences, the first, a Milton, Georgia home occupied by a 59-year old Asian female, and the second, a Fayetteville, Georgia home occupied by a father and son of Indian ancestry. During these robberies, Olaya and Scott entered the homes, held the residents at gunpoint, bound them with duct tape, and stole money, jewelry, and electronics. Johnson acted as a lookout while Olaya and Scott were in the home, communicating at all times with Scott via cellphone and knowing, in advance, that Olaya and Scott were armed and were going to use firearms to subdue the residents. Olaya also

physically assaulted (pistol-whipped) one of the residents of the Fayetteville, Georgia home. Later, Olaya, defendant, and Scott sold some of the stolen property at a Georgia pawn shop.

In October 2014, Castro provided target addresses to Olaya, this time for residences in New York and New Jersey. On October 16, 2014, Olaya, defendant, Scott and another individual confronted a victim in the backyard of a home located in West Babylon, New York.   The crew beat the victim with a firearm and forced him into the home.   Once inside, the crew corralled all of the adults and children into a room, ordered them to lie on the floor, and stole cash and jewelry. The West Babylon home was occupied by two families of Indian ancestry.

On Halloween night, October 31, 2014, Olaya, defendant, Scott, and Williams burglarized a home belonging to a family of Asian ancestry, located in Farmingdale, New York, and stole cash, jewelry, electronics, clothing and other items.   Later that same evening, Olaya, defendant, Scott, and Williams, disguised in masks, forcibly entered a South Farmingdale, New York home occupied by a family of Indian ancestry. The crew held the family at gunpoint, pistol-whipped the father, bound the family (with the exception of a 2-year old infant) with duct tape, and stole cash, jewelry, and electronics from the home.   On this same date, defendant wired

7

money, via Western Union, to Castro.

### 2.   SENTENCING GUIDELINES

### A.   Standard of Proof

The Court will find sentencing factors by a preponderance of the evidence, except for the enhancement found at U.S.S.G. § 3A1.1(a), for which the Court must find the requisite sentencing factors beyond a reasonable doubt.

### B.   Agreed Guideline Range

The parties disagree on the proper scoring of the following guideline: § 3A1.1(a) – the government contends that a 3-point enhancement should be added for the intentional selection of any victim or any property as the object of the offense of conviction because of the actual or perceived race, color, religion, national origin and/or ethnicity of any person; the defendant contends that no points should be added under section § 3A1.1(a).

Except as provided below, the government recommends that the Court determine that defendant's guideline range is **168 to 210 months**, as set forth on the attached worksheets. Defendant recommends that, based on the parties' disagreement as to the applicability of § 3A1.1(a), the Court determine that his guideline range is **121 to 151 months**. Furthermore, if the Court finds:

1. That defendant's criminal history category is higher than reflected on the attached worksheets, or

2. that the offense level should be higher because, after pleading guilty, defendant made any false statement to or withheld information from his probation officer; otherwise demonstrated a lack of acceptance of responsibility for his offense; or obstructed justice or committed any crime,

and if any such finding results in a guideline range higher than **168 to 210 months**, (or **121 to 151 months** if the court determines that no points should be scored under § 3A1.1(a)), the higher guideline range becomes the **agreed range**. However, if the Court finds that defendant is a career offender, an armed career criminal, or a repeat and dangerous sex offender as defined under the sentencing guidelines or other federal law, and that finding is not already reflected in the attached worksheets, this paragraph does not authorize a corresponding increase in the agreed range.

Neither party may take a position concerning the applicable guidelines that is different than any position of that party as reflected in the attached worksheets, except as necessary to the Court's determination regarding subsections 1) and 2), above.

3.    <u>**SENTENCE**</u>

The Court will impose a sentence pursuant to 18 U.S.C. § 3553, and in doing so must consider the sentencing guideline range.

A.    <u>**Imprisonment**</u>

Pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), the total sentence of imprisonment may not exceed the top of the sentencing guideline range as determined by Paragraph 2B.

B.    <u>**Supervised Release**</u>

A term of supervised release, if imposed, follows the term of imprisonment. There is no agreement on supervised release. In other words, the Court may impose any term of supervised release up to the statutory maximum term, which in this case is **5 years**. The agreement concerning imprisonment described above in Paragraph 3A does not apply to any term of imprisonment that result from any later revocation of supervised release.

C.    <u>**Special Assessment**</u>

Defendant shall pay a special assessment of **$100.00**.

D.    <u>**Fine**</u>

There is no agreement as to fines.

10

### E.  <u>Restitution</u>

The Court shall order restitution to every identifiable victim of defendant's offenses.   The victims and full amounts of restitution in this case will be determined at sentencing.

## 4.  <u>FORFEITURE</u>

Defendant agrees that he will not contest, or assist anyone else in contesting, the forfeiture of all of the firearms and ammunition, U.S. Currency, foreign currency, jewelry, electronics, computers, laptops, cameras, electronic equipment, personal property and other items that were seized in connection with the investigation of this matter, to the extent that the government seeks forfeiture of such items in any forfeiture action or proceeding.

In entering into the foregoing agreement with respect to forfeiture, defendant expressly waives his right to have a jury determine the forfeitability of property subject to forfeiture in this action as provided by Rule 32.2(b) of the Federal Rules of Criminal Procedure.

With respect to the property covered by this agreement, defendant agrees to the entry of one or more orders of forfeiture of such property upon application by the United States at, or any time before, his sentencing in this case. At least two

weeks prior to the sentencing date, defendant agrees to sign such an order, indicating he consents to its entry if requested to do so by the government. Pursuant to Fed.R.Crim.P. 32.2(b)(4)(A), defendant agrees that the order of forfeiture shall become effective and final as to he immediately upon being entered by the Court.

Defendant further agrees to hold the United States, its agents and employees harmless from any claims whatsoever in connection with the seizure and forfeiture of property covered by this agreement.

In entering into this agreement with respect to forfeiture, defendant knowingly, voluntarily, and intelligently waives any challenge to the above-described forfeiture based upon the Excessive Fines Clause of the Eighth Amendment to the United States Constitution.

Defendant further waives the requirements of Federal Rules of Criminal Procedure 32.2 and 43(a) regarding notice of the forfeiture in the charging instrument, pronouncement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment. Defendant acknowledges that he understands that the forfeiture of assets is part of the sentence that may be imposed in this case and waives any failure by the Court to advise him of this, pursuant to Rule 11(b)(1)(J), at the time his guilty plea is accepted.

Defendant agrees that he will cooperate with the United States by taking whatever steps are necessary to deliver possession of, and clear title to, the above-identified property to the United States and will execute such legal documents as may be required to transfer title to the United States and by taking whatever steps are necessary to ensure that the property is not sold, disbursed, hidden, wasted or otherwise made unavailable for forfeiture. If any other person or entity has any interest in the property subject to forfeiture, defendant will provide the government with the name and address of the person or entity that has an interest in, and/or possession of, the asset, and assist the government in obtaining a release of interest from any such other person or entity.

Transfer of title, ownership, and interest will be completed prior to sentencing. Defendant will not transfer any interest in, or create any additional encumbrance on, any property representing the proceeds of, or involved in, his offense as alleged in Count One of the Second Superseding Indictment. Defendant agrees to take all steps as requested by the United States to pass clear title to forfeitable assets to the United States, and to testify truthfully in any forfeiture proceeding concerning forfeitable assets, if requested to do so by the government.

5.     **Use of Withdrawn Guilty Plea**

If the Court allows defendant to withdraw his guilty plea for a "fair and just reason" pursuant to Fed. R. Crim. P. 11(d)(2)(B), defendant waives his rights under Fed. R. Evid. 410, and the government may use his guilty plea, any statement made under oath at the change-of-plea hearing, and the factual basis statement in this plea agreement, against him in any proceeding.

6.     **EACH PARTY'S RIGHT TO WITHDRAW FROM THIS AGREEMENT**

The government may withdraw from this agreement if the Court finds the correct guideline range to be different than is determined by Paragraph 2B.

Defendant may withdraw from this agreement, and may withdraw his guilty plea, if the Court decides to impose a sentence higher than the maximum allowed by Part 3. This is the only reason for which defendant may withdraw from this agreement. The Court shall advise defendant that if he does not withdraw his guilty plea under this circumstance, the Court may impose a sentence greater than the maximum allowed by Part 3.

7.     **WAIVER OF APPEAL**

The defendant waives any right he may have to appeal his conviction on any ground. If the defendant's sentence does not exceed the top of the guideline range

ultimately determined by the Court, the defendant also waives any right he may have to appeal his sentence on any ground.   If the defendant's sentence of imprisonment is within the guideline range ultimately determined by the Court, the government waives any right it may have to appeal the defendant's sentence.

Nothing in this waiver bars a claim of ineffective assistance of counsel on appeal or by Collateral Relief under 28 U.S.C. § 2255.

8.    **CONSEQUENCES OF WITHDRAWAL OF GUILTY PLEA OR VACATION OF CONVICTION**

If defendant is allowed to withdraw his guilty plea or if any conviction entered pursuant to this agreement is vacated, the Court shall, on the government's request, reinstate any charges that were dismissed as part of this agreement.   If additional charges are filed against defendant within six months after the date the order vacating defendant's conviction or allowing him to withdraw his guilty plea becomes final, which charges relate directly or indirectly to the conduct underlying the guilty plea or to any conduct reflected in the attached worksheets, defendant waives his right to challenge the additional charges on the ground that they were not filed in a timely manner, including any claim that they were filed after the limitations period expired.

9.    **PARTIES TO PLEA AGREEMENT**

Unless otherwise indicated, this agreement does not bind any government agency except the United States Attorney's Office for the Eastern District of Michigan.

10.   **SCOPE OF PLEA AGREEMENT**

This agreement, which includes all documents that it explicitly incorporates, is the complete agreement between the parties. This agreement supersedes all other promises, representations, understandings and agreements between the parties concerning the subject matter of this plea agreement that were made at any time before the guilty plea is entered in court. Thus, no oral or written promises made by the government to defendant or to the attorney for the defendant at any time before defendant pleads guilty are binding except to the extent they have been explicitly incorporated into this agreement.

Notwithstanding the previous paragraph, if defendant has entered into a proffer agreement in writing or a cooperation agreement in writing with the government, this plea agreement does not supersede or abrogate the terms of any such prior written agreement.

16

This agreement also does not prevent any civil or administrative actions against defendant, or any forfeiture claim against any property, by the United States or any other party.

## 11.   ACCEPTANCE OF AGREEMENT BY DEFENDANT

The government reserves the right to modify or revoke this offer at any time

before the defendant pleads guilty.


BARBARA L. MCQUADE
United States Attorney


CHRISTOPHER GRAVELINE                        DOUGLAS C. SALZENSTEIN
CHIEF, VIOLENT CRIME UNIT                     ASSISTANT UNITED STATES ATTORNEY
ASSISTANT UNITED STATES ATTORNEY

                                              KELLY PEARSON   by DCS
                                                                 P59288
                                                                 with permission
                                              KELLY PEARSON
                                              TRIAL ATTORNEY
                                              ORGANIZED CRIME AND GANG SECTION
                                              DEPARTMENT OF JUSTICE

DATE: FEBRUARY 10, 2017


BY SIGNING BELOW, DEFENDANT ACKNOWLEDGES THAT HE HAS READ (OR
BEEN READ) THIS ENTIRE DOCUMENT, UNDERSTANDS IT, AND AGREES TO ITS TERMS.
HE ALSO ACKNOWLEDGES THAT HE IS SATISFIED WITH HIS ATTORNEY'S ADVICE AND
REPRESENTATION.   DEFENDANT AGREES THAT HE HAS HAD A FULL AND COMPLETE
OPPORTUNITY TO CONFER WITH HIS LAWYER, AND HAS HAD ALL OF HIS QUESTIONS
ANSWERED BY HIS LAWYER.


RONALD E. KAPLOVITZ                           JUSTIN JOHNSON
ATTORNEY FOR DEFENDANT                        DEFENDANT


DATE:   3-9-16                                3-9-16

18

# WORKSHEET A   (Offense Levels)

Defendant: __Justin Johnson__          Count(s): __One – RICO conspiracy__

Docket No: __15-20200__          Statute(s): __18 U.S.C. 1962(d)__

Complete one Worksheet A for each count of conviction (taking into account relevant conduct and treating each stipulated offense as a separate count of conviction) before applying the multiple-count rules in U.S.S.G. ch. 3, pt. D. However, in any case involving multiple counts of conviction, if the counts of conviction are all "closely related" to each other within the meaning of U.S.S.G. § 3D1.2(d), complete only a single Worksheet A.

## 1.   BASE OFFENSE LEVEL AND SPECIFIC OFFENSE CHARACTERISTICS (U.S.S.G. ch. 2)

| Guideline Section | Description | Levels |
|---|---|---|
| 2E1.2/2B3.1(a)(1) | Base offense level – robbery – Wellsley, Dallas, GA (Overt Acts 24-26) | 20 |
| 2B3.1(b)(2)(E) | Possession/brandishing of a firearm | 5 |
| 2B3.1(b)(3) | Bodily injury | N/A |
| 2B3.1(b)(4) | Restraint of a person | 2 |
| 2B3.1(b)(6) | Firearm taken | N/A |
| 2B3.1(b)(7) | Amount of loss less than $20,000 | 0 |

## 2.   ADJUSTMENTS (U.S.S.G. ch. 3, pts. A, B, C)

| Guideline Section | Description | Levels |
|---|---|---|
| 3A1.1 | Victims selected because of race, color, religion, national origin, ethnicity | 3 |
|  |  |  |
|  |  |  |

## 3.   ADJUSTED OFFENSE LEVEL

Enter the sum of the offense levels entered in Items 1 and 2. If this Worksheet A does not cover every count of conviction (taking into account relevant conduct and treating each stipulated offense as a separate count of conviction), complete one or more additional Worksheets A and a single Worksheet B.

**30**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

☐ *If this is the only Worksheet A, check this box and skip Worksheet B.*

☐ *If the defendant has no criminal history, check this box and skip Worksheet C.*

(rev. 06/99)

# WORKSHEET A   (Offense Levels)

| Defendant: | Justin Johnson | Count(s): | One – RICO conspiracy |
|---|---|---|---|
| Docket No: | 15-20200 | Statute(s): | 18 U.S.C. 1962(d) |

Complete one Worksheet A for each count of conviction (taking into account relevant conduct and treating each stipulated offense as a separate count of conviction) before applying the multiple-count rules in U.S.S.G. ch. 3, pt. D.  However, in any case involving multiple counts of conviction, if the counts of conviction are all "closely related" to each other within the meaning of U.S.S.G. § 3D1.2(d), complete only a single Worksheet A.

## 1.   BASE OFFENSE LEVEL AND SPECIFIC OFFENSE CHARACTERISTICS (U.S.S.G. ch. 2)

| Guideline Section | Description | Levels |
|---|---|---|
| 2E1.2/2B3.1(a)(1) | Base offense level – robbery – Barberry Drive, Milton, GA (Overt Acts 27-30) | 20 |
| 2B3.1(b)(2)(E) | Possession/brandishing of a firearm | 5 |
| 2B3.1(b)(3) | Bodily injury | N/A |
| 2B3.1(b)(4) | Restraint of a person | 2 |
| 2B3.1(b)(6) | Firearm taken | N/A |
| 2B3.1(b)(7) | Amount of loss less than $20,000 | 0 |

## 2.   ADJUSTMENTS (U.S.S.G. ch. 3, pts. A, B, C)

| Guideline Section | Description | Levels |
|---|---|---|
| 3A1.1 | Victims selected because of race, color, religion, national origin, ethnicity | 3 |
| | | |
| | | |

## 3.   ADJUSTED OFFENSE LEVEL

Enter the sum of the offense levels entered in Items 1 and 2.  If this Worksheet A does not cover every count of conviction (taking into account relevant conduct and treating each stipulated offense as a separate count of conviction), complete one or more additional Worksheets A and a single Worksheet B.

30

**********************

☐ *If this is the only Worksheet A, check this box and skip Worksheet B.*

☐ *If the defendant has no criminal history, check this box and skip Worksheet C.*

(rev. 06/99)

# WORKSHEET A   (Offense Levels)

| | | | |
|---|---|---|---|
| Defendant: | Justin Johnson | Count(s): | One – RICO conspiracy |
| Docket No: | 15-20200 | Statute(s): | 18 U.S.C. 1962(d) |

Complete one Worksheet A for each count of conviction (taking into account relevant conduct and treating each stipulated offense as a separate count of conviction) before applying the multiple-count rules in U.S.S.G. ch. 3, pt. D. However, in any case involving multiple counts of conviction, if the counts of conviction are all "closely related" to each other within the meaning of U.S.S.G. § 3D1.2(d), complete only a single Worksheet A.

## 1.   BASE OFFENSE LEVEL AND SPECIFIC OFFENSE CHARACTERISTICS (U.S.S.G. ch. 2)

| Guideline Section | Description | Levels |
|---|---|---|
| 2E1.2/2B3.1(a)(1) | Base offense level – robbery – Lakepoint Lane, Fayetteville, GA (Overt Acts 31-34) | 20 |
| 2B3.1(b)(2)(E) | Possession/brandishing of a firearm | 5 |
| 2B3.1(b)(3) | Bodily injury | 2 |
| 2B3.1(b)(4) | Restraint of a person | 2 |
| 2B3.1(b)(6) | Firearm taken | N/A |
| 2B3.1(b)(7) | Amount of loss less than $20,000 | 0 |

## 2.   ADJUSTMENTS (U.S.S.G. ch. 3, pts. A, B, C)

| Guideline Section | Description | Levels |
|---|---|---|
| 3A1.1 | Victims selected because of race, color, religion, national origin, ethnicity | 3 |
| | | |
| | | |

## 3.   ADJUSTED OFFENSE LEVEL

Enter the sum of the offense levels entered in Items 1 and 2. If this Worksheet A does not cover every count of conviction (taking into account relevant conduct and treating each stipulated offense as a separate count of conviction), complete one or more additional Worksheets A and a single Worksheet B.

**32**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

☐ *If this is the only Worksheet A, check this box and skip Worksheet B.*

☐ *If the defendant has no criminal history, check this box and skip Worksheet C.*

(rev. 06/99)

# WORKSHEET A   (Offense Levels)

| | | | |
|---|---|---|---|
| Defendant: | Justin Johnson | Count(s): | One – RICO conspiracy |
| Docket No: | 15-20200 | Statute(s): | 18 U.S.C. 1962(d) |

Complete one Worksheet A for each count of conviction (taking into account relevant conduct and treating each stipulated offense as a separate count of conviction) before applying the multiple-count rules in U.S.S.G. ch. 3, pt. D. However, in any case involving multiple counts of conviction, if the counts of conviction are all "closely related" to each other within the meaning of U.S.S.G. § 3D1.2(d), complete only a single Worksheet A.

## 1.    BASE OFFENSE LEVEL AND SPECIFIC OFFENSE CHARACTERISTICS (U.S.S.G. ch. 2)

| Guideline Section | Description | Levels |
|---|---|---|
| 2E1.2/2B3.1(a)(1) | Base offense level – robbery – Newkirk Avenue, Babylon, NY | 20 |
| 2B3.1(b)(2)(E) | Possession/brandishing of a firearm | 5 |
| 2B3.1(b)(3) | Bodily injury | 2 |
| 2B3.1(b)(4) | Restraint of a person | N/A |
| 2B3.1(b)(6) | Firearm taken | N/A |
| 2B3.1(b)(7) | Amount of loss less than $20,000 | 0 |

## 2.    ADJUSTMENTS (U.S.S.G. ch. 3, pts. A, B, C)

| Guideline Section | Description | Levels |
|---|---|---|
| 3A1.1 | Victims selected because of race, color, religion, national origin, ethnicity | 3 |
| | | |
| | | |

## 3.    ADJUSTED OFFENSE LEVEL

Enter the sum of the offense levels entered in Items 1 and 2. If this Worksheet A does not cover every count of conviction (taking into account relevant conduct and treating each stipulated offense as a separate count of conviction), complete one or more additional Worksheets A and a single Worksheet B.

**30**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

☐ *If this is the only Worksheet A, check this box and skip Worksheet B.*

☐ *If the defendant has no criminal history, check this box and skip Worksheet C.*

(rev. 06/99)

# WORKSHEET A   (Offense Levels)

| Defendant: | Justin Johnson | Count(s): | One – RICO conspiracy |
|---|---|---|---|
| Docket No: | 15-20200 | Statute(s): | 18 U.S.C. 1962(d) |

Complete one Worksheet A for each count of conviction (taking into account relevant conduct and treating each stipulated offense as a separate count of conviction) before applying the multiple-count rules in U.S.S.G. ch. 3, pt. D. However, in any case involving multiple counts of conviction, if the counts of conviction are all "closely related" to each other within the meaning of U.S.S.G. § 3D1.2(d), complete only a single Worksheet A.

## 1.   BASE OFFENSE LEVEL AND SPECIFIC OFFENSE CHARACTERISTICS (U.S.S.G. ch. 2)

| Guideline Section | Description | Levels |
|---|---|---|
| 2E1.2/2B3.1(a)(1) | Base offense level – robbery – Regina Road, Farmingdale NY | 20 |
| 2B3.1(b)(2)(E) | Possession/brandishing of a firearm | N/A |
| 2B3.1(b)(3) | Bodily injury | N/A |
| 2B3.1(b)(4) | Restraint of a person | N/A |
| 2B3.1(b)(6) | Firearm taken | N/A |
| 2B3.1(b)(7) | Amount of loss less than $20,000 | 0 |

## 2.   ADJUSTMENTS (U.S.S.G. ch. 3, pts. A, B, C)

| Guideline Section | Description | Levels |
|---|---|---|
| 3A1.1 | Victims selected because of race, color, religion, national origin, ethnicity | 3 |
| | | |
| | | |

## 3.   ADJUSTED OFFENSE LEVEL

Enter the sum of the offense levels entered in Items 1 and 2. If this Worksheet A does not cover every count of conviction (taking into account relevant conduct and treating each stipulated offense as a separate count of conviction), complete one or more additional Worksheets A and a single Worksheet B.

**23**

*********************

☐ *If this is the only Worksheet A, check this box and skip Worksheet B.*

☐ *If the defendant has no criminal history, check this box and skip Worksheet C.*

(rev. 06/99)

# WORKSHEET A   (Offense Levels)

| | | | |
|---|---|---|---|
| Defendant: | Justin Johnson | Count(s): | One – RICO conspiracy |
| Docket No: | 15-20200 | Statute(s): | 18 U.S.C. 1962(d) |

Complete one Worksheet A for each count of conviction (taking into account relevant conduct and treating each stipulated offense as a separate count of conviction) before applying the multiple-count rules in U.S.S.G. ch. 3, pt. D. However, in any case involving multiple counts of conviction, if the counts of conviction are all "closely related" to each other within the meaning of U.S.S.G. § 3D1.2(d), complete only a single Worksheet A.

## 1.  BASE OFFENSE LEVEL AND SPECIFIC OFFENSE CHARACTERISTICS (U.S.S.G. ch. 2)

| Guideline Section | Description | Levels |
|---|---|---|
| 2E1.2/2B3.1(a)(1) | Base offense level – robbery – Beach Street, Nassau County, NY (Overt Acts 38-40) | 20 |
| 2B3.1(b)(2)(E) | "otherwise use" of a firearm | 6 |
| 2B3.1(b)(3) | Bodily injury | 2 |
| 2B3.1(b)(4) | Restraint of a person | 2 |
| 2B3.1(b)(6) | Firearm taken | N/A |
| 2B3.1(b)(7) | Amount of loss less than $20,000 | 0 |

## 2.  ADJUSTMENTS (U.S.S.G. ch. 3, pts. A, B, C)

| Guideline Section | Description | Levels |
|---|---|---|
| 3A1.1 | Victims selected because of race, color, religion, national origin, ethnicity | 3 |
| | | |
| | | |

## 3.  ADJUSTED OFFENSE LEVEL

Enter the sum of the offense levels entered in Items 1 and 2. If this Worksheet A does not cover every count of conviction (taking into account relevant conduct and treating each stipulated offense as a separate count of conviction), complete one or more additional Worksheets A and a single Worksheet B.

**33**

*********************

☐ *If this is the only Worksheet A, check this box and skip Worksheet B.*

☐ *If the defendant has no criminal history, check this box and skip Worksheet C.*

(rev. 06/99)

# WORKSHEET B   (Multiple Counts)

## Instructions (U.S.S.G. ch. 3, pt. D):

- Group the counts of conviction into distinct Groups of Closely Related Counts. "All counts involving substantially the same harm shall be grouped together into a single Group." (*See* U.S.S.G. § 3D1.2.)

- Determine the offense level applicable to each Group. (*See* U.S.S.G. § 3D1.3.)

- Determine the combined offense level by assigning "units" to each Group as follows (*see* U.S.S.G. § 3D1.4):

- assign 1 unit to the Group with the highest offense level,
- assign 1 unit to each additional Group that is equally serious as, or 1 to 4 levels less serious than, the Group with the highest offense level,
- assign ½ unit to each Group that is 5 to 8 levels less serious than the Group with the highest offense level,
- assign no units to each Group that is 9 or more levels less serious than the Group with the highest offense level.



1. **GROUP ONE: COUNTS** 24-26, 27-30, NEWKIRK
   ADJUSTED OFFENSE LEVEL          | 30 |      | 3 units |

2. **GROUP TWO: COUNTS** 38-40
   ADJUSTED OFFENSE LEVEL          | 33 |      | 1 unit |

3. **GROUP THREE: COUNTS** 31-34
   ADJUSTED OFFENSE LEVEL          | 32 |      | 1 unit |

4. **GROUP FOUR: COUNTS** REGINA
   ADJUSTED OFFENSE LEVEL          | 23 |      | 0 unit |

5. **TOTAL UNITS**                               | 5 units |

6. **INCREASE IN OFFENSE LEVEL**

   1 unit → no increase          2½-3 units → add 3 levels
   1½ units → add 1 level   3½ -5 units → add 4 levels
   2 units → add 2 levels          >5 levels → add 5 levels

   | 4 levels |

7. **ADJUSTED OFFENSE LEVEL OF GROUP WITH THE HIGHEST OFFENSE LEVEL**          | 33 |

8. **COMBINED ADJUSTED OFFENSE LEVEL**          | 37 |

Enter the sum of the offense levels entered in Items 6 and 7.

(rev. 06/99)

# WORKSHEET C   (Criminal History)

Date of defendant's commencement of the instant offense (taking into account relevant conduct and stipulated offenses):

## 1.   PRIOR SENTENCES

### Prior Sentence of Imprisonment Exceeding 13 Months (U.S.S.G. §§ 4A1.1(a)):   3 POINTS

Enter 3 points for each prior adult sentence of imprisonment exceeding one year and one month that either (1) was imposed within 15 years of the defendant's commencement of the instant offenses (taking into account relevant conduct and stipulated offenses) or (2) resulted in the defendant's confinement during any part of that 15-year period. (*See* U.S.S.G. §§ 4A1.1(a), 4A1.2(d)(1), (e)(1).)

### Prior Sentence of Imprisonment of at Least 60 Days (U.S.S.G. §§ 4A1.1(b)):   2 POINTS

Enter 2 points for each prior sentence of imprisonment of at least 60 days not counted under U.S.S.G. § 4A1.1(a) that either (1) resulted from an offense committed after the defendant turned 18 and was imposed within 10 years of the defendant's commencement of the instant offense (taking into account relevant conduct and stipulated offenses) (*see* U.S.S.G. §§ 4A1.1(b), 4A1.2(e)(2)) or (2) resulted from an offense committed before the defendant turned 18 and resulted in the defendant's confinement during any part of the 5-year period preceding the defendant's commencement of the instant offense (*see* U.S.S.G. §§ 4A1.1(b), 4A1.2(d)(2)(A)).\

### Other Prior Sentences (U.S.S.G. §§ 4A1.1(c)):   1 POINT

Enter 1 point for each prior sentence not counted under U.S.S.G. § 4A1.1(a) or (b) that either (1) resulted from an offense committed after the defendant turned 18 and was imposed within 10 years of the defendant's commencement of the instant offense (taking into account relevant conduct and stipulated offenses) (*see* U.S.S.G. §§ 4A1.1(c), 4A1.2(e)(2)) or (2) resulted from an offense committed before the defendant turned 18 and was imposed within 5 years of the defendant's commencement of the instant offense (taking into account relevant conduct and stipulated offenses) (*see* U.S.S.G. §§ 4A1.1(c), 4A1.2(d)(2)(B)).  NOTE:  No more than 4 points may be added under this item.

| Date of Imposition | Status* | Offense | Sentence | Release Date** | Points |
|---|---|---|---|---|---|
| 4/7/06 | | Criminal mischief - juvenile | 12 months' probation | | 0 |
| 10/1/10 | | Unauthorized use of a vehicle | 6 months jail | | 2 |
| | | | | | |
| | | | | | |
| | | | | | |

\*   If the defendant committed the offense before turning 18, indicate whether he or she was sentenced as a juvenile (J) or as an adult (A).

\*\*   A release date is required in only three situations:  (1) when a sentence covered under U.S.S.G. § 4A1.1(a) was imposed more than 15 years before the defendant's commencement of the instant offense (taking into account relevant conduct and stipulated offenses) but resulted in his or her confinement during any part of that 15-year period; (2) when a sentence counted under U.S.S.G. § 4A1.1(b) was imposed for an offense committed before the defendant turned 18 but resulted in his or her confinement during any part of the 5-year period preceding his or her commencement of the instant offense (taking into account relevant conduct and stipulated offenses); and (3) when 2 criminal history points are added pursuant to U.S.S.G. § 4A1.1(c) because the defendant committed the instant offense (taking into account relevant conduct and stipulated offenses) shortly after or during imprisonment resulting from a sentence counted under U.S.S.G. § 4A1.1(a) or (b) or while he or she was on escape status for such a sentence.

(rev. 06/99)

(WORKSHEET C, p. 2)

**2.   COMMISSION OF INSTANT OFFENSE WHILE UNDER PRIOR SENTENCE (U.S.S.G. § 4A1.1(d))**

Enter 2 points if the defendant committed any part of the instant offense (taking into account relevant conduct and stipulated offenses) while under any criminal justice sentence having a custodial or supervisory component, including probation, parole, supervised release, imprisonment, work release, and escape status. (*See* U.S.S.G. §§ 4A1.1(d), 4A1.2(m), (n).) List the type of control and identify the sentence from which it resulted.

**3.   PRIOR SENTENCE RESULTING FROM CRIME OF VIOLENCE (U.S.S.G. § 4A1.1(e))**

Enter 1 point for each prior sentence resulting from a conviction for a crime of violence that did not receive any points under U.S.S.G. § 4A1.1(a), (b), or (c) because such sentence was considered related to another sentence resulting from a conviction for a crime of violence. But enter no points where the sentences are considered related because the offenses occurred on the same occasion. (*See* U.S.S.G. §§ 4A1.1(e), 4A1.2(p).) Identify the crimes of violence and briefly explain why the cases are considered related. NOTE: No more than 3 points may be added under this item.

**4.   TOTAL CRIMINAL HISTORY POINTS**

Enter the sum of the criminal history points entered in Items 1-3.

| 2 |

**5.   CRIMINAL HISTORY CATEGORY**

| Total Criminal History Points | Criminal History Category |
|---|---|
| 0 – 1 | I |
| 2 – 3 | II |
| 4 – 6 | III |
| 7 – 9 | IV |
| 10 – 12 | V |
| ≥ 13 | VI |

| II |

(rev. 06/99)

# <u>WORKSHEET D   (Guideline Range)</u>

**1.    (COMBINED) ADJUSTED OFFENSE LEVEL**

Enter the adjusted offense level entered in Item 3 of Worksheet A or the combined adjusted offense level
entered in Item 8 of Worksheet B.

| 37 |

**2.    ADJUSTMENT FOR ACCEPTANCE OF RESPONSIBILITY (U.S.S.G § 3E1.1)**

| -3 |

**3.    TOTAL OFFENSE LEVEL**

Enter the difference between Items 1 and 2.

| 34 |

**4.    CRIMINAL HISTORY CATEGORY**

Enter "I" if the defendant has no criminal history.  Otherwise, enter the criminal history category
entered in Item 6 of Worksheet C.

| II |

**5.    CAREER OFFENDER / CRIMINAL LIVELIHOOD / ARMED CAREER CRIMINAL
(U.S.S.G. ch. 4, pt. B)**

a.  <u>Total Offense Level</u>:  If the career offender provision (U.S.S.G. § 4B1.1), the criminal livelihood provision
(U.S.S.G. § 4B1.3), or the armed career criminal provision (U.S.S.G. § 4B1.4) results in a total offense
level higher than the total offense level entered in Item 3, enter the higher offense level total.

b.  <u>Criminal History Category</u>:  If the career offender provision (U.S.S.G. § 4B1.1) or the armed career criminal
provision (U.S.S.G. § 4B1.4) results in a criminal history category higher than the criminal history category
entered in Item 4, enter the higher criminal history category.

**6.    GUIDELINE RANGE FROM SENTENCING TABLE (U.S.S.G. ch. 5, pt. A)**

Enter the guideline range in the Sentencing Table (*see* U.S.S.G. ch. 5, pt. A) produced by the total
offense level entered in Item 3 or 5.a and the criminal history category entered in Item 4 or 5.b.

| 168-210
months |

**7.    STATUTORY RESTRICTIONS ON OR SUPERSESSION OF GUIDELINE RANGE**

If the maximum sentence authorized by statute is below, or a minimum sentence required by statute
is above, the guideline range entered in Item 6, enter either the guideline range as restricted by
statute or the sentence required by statute. (*See* U.S.S.G. § 5G1.1.) If the sentence on any count of
conviction is required by statute to be consecutive to the sentence on any other count of conviction, explain why.

| months |

(rev. 06/99)

# WORKSHEET E   (Authorized Guideline Sentences)

1.    **PROBATION (U.S.S.G. ch. 5, pt. B)**

        a.  <u>Imposition of a Term of Probation</u> (U.S.S.G. § 5B1.1)

        ☒   1.  Probation is not authorized by the guidelines (minimum of guideline range > 6 months or statute of conviction is a Class A or a Class B felony).  If this box is checked, go to Item 2 (Split Sentence).

        ☐   2.  Probation is authorized by the guidelines (minimum of guideline range = zero months).

        ☐   3.  Probation is authorized by the guidelines, provided the court imposes a condition or combination of conditions requiring intermittent confinement, community confinement, or home detention satisfying the minimum of the guideline range (minimum of guideline range > 0 months but ≤ 6 months).

        b.  <u>Length of Term of Probation</u> (U.S.S.G. § 5B1.2)

        ☐   1.  At least 1 year but not more than 5 years (total offense level ≥ 6).

        ☐   2.  No more than 3 years (total offense level < 6).

        c.  <u>Conditions of Probation</u> (U.S.S.G. § 5B1.3)

        The court must impose certain conditions of probation and may impose other conditions of probation.

2.    **SPLIT SENTENCE (U.S.S.G. § 5C1.1(c)(2), (d)(2))**

        ☒   a.  A split sentence is not authorized (minimum of guideline range = 0 months or > 10 months).

        ☐   b.  A split sentence is authorized (minimum of guideline range > 0 months but ≤ 10 months).  The court may impose a sentence of imprisonment that includes a term of supervised release with a condition that substitutes community confinement or home detention for imprisonment, provided that at least one-half of the minimum of the guideline range is satisfied by imprisonment (if the minimum of the guideline range is 8, 9, or 10 months), or that at least one month is satisfied by imprisonment (if the minimum of the guideline range is 1, 2, 3, 4, or 6 months).  The authorized length of the term of supervised release is set forth below in Item 4.b

3.    **IMPRISONMENT  (U.S.S.G. ch. 5, pt. C)**

    A term of imprisonment is authorized by the guidelines if it is within the applicable guideline range (entered in Item 6 of Worksheet D).  (*See* U.S.S.G. § 5C1.1.)

(WORKSHEET E, p. 2)

4.   **SUPERVISED RELEASE**  (U.S.S.G. ch 5., pt. D)

   a.   Imposition of a Term of Supervised Release  (U.S.S.G. § 5D1.1)

   The court must impose a term of supervised release if it imposes a term of imprisonment of more than one year, or if it is required to do so by statute.  The court may impose a term of supervised release if it imposes a term of imprisonment of one year or less.

   b.   Length of Term of Supervised Release  (U.S.S.G. § 5D1.2)

   ☒   1.   At least 2 years but not more than 5 years, where the count of conviction is a Class A or a Class B felony, i.e., an offense carrying a maximum term of imprisonment ≥ 25 years.

   ☐   2.   At least 1 years but not more than 3 years, where the count of conviction is a Class C or a Class D felony, i.e., an offense carrying a maximum term of imprisonment ≥ 5 years but < 25 years.

   ☐   3.   1 year, where the count of conviction is a Class E felony or a Class A misdemeanor,  i.e., an offense carrying a maximum term of imprisonment > 6 months but < 5 years.

   ☐   4.   The statute of conviction requires a minimum term of supervised release of _____ months.

   c.   Conditions of Supervised Release  (U.S.S.G. § 5D1.3)

   The court must impose certain conditions of supervised release and may impose other conditions of supervised release.

5.   **RESTITUTION (U.S.S.G. § 5E1.1)**

   ☒   1.   The court will determine whether restitution should be ordered and in what amount.

   ☐   2.   Full restitution to the victim(s) of the offense(s) of conviction is *required* by statute.  (*See, e.g.*, 18 U.S.C. §§ 3663A, 2327.)  The parties agree that full restitution is $_____.

   ☐   3.   The parties agree that the court may order restitution to the victim(s) of the offense(s) of conviction in any amount up to and including $_____.  (*See* 18 U.S.C. §§ 3663(a)(3).)

   ☐   4.   The parties agree that the court may *also* order restitution to persons other than the victim(s) of the offense(s) of conviction.  (*See* 18 U.S.C. §§ 3663(a)(1)(A), 3663A(a)(3).)

   ☐   5.   Restitution is not applicable.

(rev. 06/99)

(WORKSHEET E, p. 3)

**6. FINE (U.S.S.G. § 5E1.2)**

a. Fines for Individual Defendants

The court must impose a fine unless "the defendant establishes that he [or she] is unable to pay and is not likely to become able to pay any fine." (*See* U.S.S.G. § 5E1.2(a).)  Generally, the fine authorized by the guidelines is limited to the range established in the Fine Table. (*See* U.S.S.G. § 5E1.2(b).)  However, there are exceptions to this general rule. (*See* U.S.S.G. § 5E1.2(b), (c)(4).)

b. Fine Range from Fine Table (U.S.S.G. § 5E1.2(c)(3))

| Minimum Fine | Maximum Fine |
|---|---|
| $40,000 | $250,000 |

**7. SPECIAL ASSESSMENT(S) (U.S.S.G. § 5E1.3)**

The court must impose a special assessment on every count of conviction.  The special assessments for individual defendants are

$100.00 for every count charging a felony ($50.00 if the offense was completed before April 24, 1996)
$ 25.00 for every count charging a Class A misdemeanor,
$ 10.00 for every count charging a Class B misdemeanor, and
$   5.00 for every count charging a Class C misdemeanor or an infraction.

The defendant must pay a special assessment or special assessments in the total amount of $ _____$100.00_____.

**8. ADDITIONAL APPLICABLE GUIDELINES, POLICY STATEMENTS, AND STATUTES**

List any additional applicable guideline, policy statement, or statute.

_____

**9. UPWARD OR DOWNWARD DEPARTURE (U.S.S.G. ch. 5, pts. H & K)**

List any applicable aggravating or mitigating circumstance that might support a term of imprisonment above or below the applicable guideline range. _____

_____

_____

(rev. 06/99)