UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


UNITED STATES OF AMERICA,

                Plaintiff,

                                HONORABLE LAURIE J. MICHELSON

     v.

                                No. 15-20200

D7: JUSTIN JOHNSON,

                Defendant.
_____/


PLEA HEARING

Detroit, Michigan --  Thursday, March 9, 2017


APPEARANCES:

| | |
|---|---|
| Christopher Graveline, Esq. | Ronald E. Kaplovitz, Esq. |
| U.S. Attorney's Office | Kaplovitz & Associates PC |
| 211 W. Fort Street, #2001 | 2057 Orchard Lake Road |
| Detroit MI 48226 | Sylvan Lake, MI 48320-2606 |
| Tel: (313) 226-9100 | Tel: (248) 333-3666 |
| christopher.graveline@usdoj.gov | rkaplovitz@aol.com |
| On behalf of Plaintiff | On behalf of Defendant |


-  -  -


To Obtain A Certified Transcript, Contact:
Nefertiti A. Matthews, Official Court Reporter
Theodore Levin United States Courthouse
231 West Lafayette Boulevard, Room 234
Detroit, Michigan  48226
www.transcriptorders.com • jodi_matthews@mied.uscourts.gov

Proceedings recorded by mechanical stenography.
Transcript produced by computer-aided transcription.

**Plea Hearing**
**Thursday, March 9, 2017**

# I  N  D  E  X

- - -

Hearing:                                                    Page: Vol.:

**Plea Hearing**  ...................................3     1


Certification of Reporter .......................39

- - -

Joint Exhibits

|      Number      |                              | Referred | Vol. |
|------------------|------------------------------|----------|------|
| 1                | Rule 11 Plea Agreement:      | 4        | 1    |
|                  | Justin Johnson               |          |      |

1              **Detroit, Michigan**

2              **Thursday, March 9, 2017**

3              **1:11 p.m.**

4                   **-   -   -**

5          **THE CLERK:**  The Court calls Case Number 15-20200;

6     United States of America versus Defendant Seven, Justin

7     Johnson.  Counsel, please state your appearances, for the

8     record.

9          **MR. GRAVELINE:**  Good afternoon, Your Honor.  Chris

10    Graveline, on behalf of the United States.

11         **MR. KAPLOVITZ:**  Ron Kaplovitz, on behalf of Mr.

12    Johnson.

13                  **Plea Hearing**

14         **THE COURT:**  Good afternoon.  And good afternoon to

15    Mr. Johnson.

16        Mr. Johnson has been charged with several other defendants

17    in a multi-count RICO Indictment.  He's pled not guilty to the

18    charges against him.  And Mr. Kaplovitz, as I understand it,

19    prior to the formal plea cutoff date, that Mr. Johnson wishes

20    to change his plea and enter a plea of guilty to Count One of

21    the Second Superseding Indictment; is that correct?

22         **MR. KAPLOVITZ:**  Yes, Your Honor.

23         **THE COURT:**  All right.  Then I'm going to ask you and

24    Mr. Johnson to come up to the podium.  It does not appear that

25    the microphone is working, so I'll just ask everyone to talk as

1   loudly as you can.

2        All right.  Mr. Kaplovitz, will the plea be based on the

3   Rule 11 Plea Agreement that the parties have provided to The

4   Court this afternoon?

5            **MR. KAPLOVITZ:**  Yes, Your Honor.

6            **THE COURT:**  Then let's mark that as Exhibit 1.

7        Mr. Johnson, we're going to go through this in some detail

8   in just a few moments.  So, I want to make sure that you've had

9   an opportunity to review the Rule 11 Plea Agreement and to

10  discuss the contents with your lawyer.  Have you had that

11  opportunity?

12       (Joint Exhibit 1, Rule 11 Plea Agreement: Justin Johnson,

13          identified.)

14           **THE DEFENDANT:**  Yes, Your Honor.

15           **THE COURT:**  And from that review and discussion, do

16  you believe that you understand the terms of the Rule 11 Plea

17  Agreement?

18           **THE DEFENDANT:**  Yes, Ma'am.

19           **THE COURT:**  And Mr. Kaplovitz, do you believe that

20  Mr. Johnson understands the terms of the Rule 11 Plea

21  Agreement?

22           **MR. KAPLOVITZ:**  I do, Your Honor.

23           **THE COURT:**  First thing I'm going to do then is ask

24  Mr. Graveline if you would please advise Mr. Johnson of the

25  count that he intends to plead guilty to by either reading or

1  summarizing the indictment for him.

2          **MR. GRAVELINE:**  Yes, Your Honor.  Mr. Johnson will be

3  pleading guilty today to Count One, that is, RICO Conspiracy,

4  which carries with it a statutory maximum of life in prison, a

5  $250,000 fine, and up to five years of supervised release.

6  RICO Conspiracy consists of that the defendant participated in

7  an Enterprise that's defined by 18 U.S.C. 1961 and identified

8  as the Castro Enterprise in the second superseding indictment.

9  That that Enterprise engaged in or had some effect on

10  interstate commerce.

11      That some time between April of 2011 and December 11th of

12  2014, the defendant and at least one other person reached an

13  agreement or came to an understanding to conduct the affairs of

14  the Enterprise through a pattern of racketeering activity and

15  that the defendant voluntarily and intentionally joined in that

16  agreement or understanding knowing that the Enterprise existed

17  and seeking to attain the goals of that Enterprise.

18          **THE COURT:**  Thank you.  And Mr. Johnson, do you

19  understand the charge that the lawyer for the Government just

20  explained to you?

21          **THE DEFENDANT:**  Yes, Ma'am.

22          **THE COURT:**  Is that the charge that you intend to

23  plead guilty to?

24          **THE DEFENDANT:**  Yes, Ma'am.

25          **THE COURT:**  And before I decide whether to accept

1    your change in plea from "not guilty" to "guilty", there are

2    some things that I want to discuss with you and the lawyers

3    that have to do with the facts of the crime charged as well as

4    the impact of pleading guilty.  And I do that because I want to

5    make sure that you fully understand what you're doing.  That

6    you fully understand the consequences of what you're doing.

7    And that you're making these decisions knowingly and

8    voluntarily, do you understand that?

9              **THE DEFENDANT:**  Yes, Ma'am, I do.

10             **THE COURT:**  And you have previously been advised that

11   you have the right to remain silent and not incriminate

12   yourself.  Not say things that make you appear guilty.  Do you

13   wish to waive or give up that Right for the purpose of pleading

14   guilty to Count One in the indictment this afternoon?

15             **THE DEFENDANT:**  Yes, Ma'am.

16             **THE COURT:**  So, I'm going to put you under oath.  If

17   you would raise your right hand for me?

18                          -   -   -

19                    **JUSTIN JOHNSON,**

20        **at 1:16 p.m., being first duly sworn to tell**

21        **the truth, was examined and testified upon**

22        **oath as follows:**

23             **THE COURT:**  Okay.  So, Mr. Johnson, I've now put you

24   under oath.  I want to first advise you that if you provide any

25   false information, your answers may later be used against you

**Plea Hearing**
**Thursday/March 9, 2017**

7

1    in a separate proceeding for perjury or for making a false

2    statement, do you understand that?

3            **THE DEFENDANT:**  Yes, Ma'am.

4        **THE COURT:**  Okay.  I'm just first going to ask you

5    some general background questions about yourself and mental

6    health to make sure that you're mentally competent to enter

7    into a guilty plea.

8        Can you tell me your full name?

9            **THE DEFENDANT:**  Justin Johnson.

10            **THE COURT:**  And Mr. Johnson, how old are you?

11            **THE DEFENDANT:**  Twenty-seven.

12            **THE COURT:**  And tell me your highest level of school

13    that you completed.

14            **THE DEFENDANT:**  Eleventh grade.

15            **THE COURT:**  And you have any issues reading, writing,

16    or understanding English?

17            **THE DEFENDANT:**  No, Ma'am, I don't.

18            **THE COURT:**  Any issues so far understanding any of

19    the questions that I've been asking you?

20            **THE DEFENDANT:**  No, Ma'am.

21            **THE COURT:**  Have you ever been treated for any mental

22    illness or addiction to alcohol or any narcotic drugs?

23            **THE DEFENDANT:**  I have ADHD, that's it.

24            **THE COURT:**  Okay.  Do you take any medication for

25    that?

1          THE DEFENDANT:  Yes, Ma'am, I did.

2          THE COURT:  And when were you diagnosed with ADHD?

3          THE DEFENDANT:  At age 12 or 13.

4          THE COURT:  Okay.  So, it's something you've had for

5     a while?

6          THE DEFENDANT:  Yes, Ma'am.

7          THE COURT:  Is it anything that would impact your

8     ability to think or to reason or to make decisions?

9          THE DEFENDANT:  No, Ma'am.

10          THE COURT:  And are you presently under the influence

11     of any drugs or alcohol or any medications?

12          THE DEFENDANT:  No, Ma'am.

13          THE COURT:  So, you're not currently taking any

14     medication for the ADHD?

15          THE DEFENDANT:  No, Ma'am.

16          THE COURT:  Okay.  As you stand here today, is there

17     anything, that you're aware of, that would affect your ability

18     to think or to reason or to make decisions?

19          THE DEFENDANT:  No, Ma'am, I'm competent.

20          THE COURT:  And anything about your mental history

21     that you think I should be aware of?

22          THE DEFENDANT:  No, Ma'am.

23          THE COURT:  And Mr. Kaplovitz, anything about Mr.

24     Johnson's mental health history that you think I should be

25     aware of?

1        **MR. KAPLOVITZ:**  No, Your Honor.  I've been dealing

2   with him now for a year and a half and I've never had any

3   question in my mind.

4        **THE COURT:**  Are you satisfied he's able to understand

5   the proceeding today and to answer my questions?

6        **MR. KAPLOVITZ:**  Yes.

7        **THE COURT:**  Okay.  Thank you.

8   Mr. Graveline, any concerns from the Government?

9        **MR. GRAVELINE:**  No, Your Honor.

10       **THE COURT:**  Okay.  I do find that Mr. Johnson is

11  answering my questions consistent with competence.  His bearing

12  and demeanor are alert, oriented, and focused in all respects.

13  I appreciate the information that he's provided and I don't see

14  anything that would suggest he's not competent to proceed with

15  the proceedings.

16  Mr. Johnson, you've also previously been advised that you

17  have the right to have a lawyer represent you at all critical

18  stages of this case.  Mr. Kaplovitz is with you this afternoon

19  and has been representing you during this case.

20  Have you discussed this case with him and the issue of

21  pleading guilty?

22       **THE DEFENDANT:**  Yes, Ma'am.

23       **THE COURT:**  Have you been able to ask Mr. Kaplovitz

24  any and all questions that you have about pleading guilty?

25       **THE DEFENDANT:**  Yes, Ma'am, I have.

**Plea Hearing**
**Thursday/March 9, 2017**                                          10

1          THE COURT:  And has he been able to answer those

2      questions for you?

3          THE DEFENDANT:  Yes, Ma'am, he has.

4          THE COURT:  Have you discussed with him the evidence

5      against you and any defenses that you might have to that

6      evidence?

7          THE DEFENDANT:  Yes, Ma'am.

8          THE COURT:  Have you discussed with him the

9      advantages and disadvantages of pleading guilty versus going to

10     trial?

11         THE DEFENDANT:  Yes, Ma'am.

12         THE COURT:  And are you satisfied with the advice and

13     services that Mr. Kaplovitz has provided to you in this case?

14         THE DEFENDANT:  Yes, Ma'am, I'm satisfied.

15         THE COURT:  Do you feel that you had enough time to

16     think things over and to decide what you want to do, in this

17     case, in terms of pleading guilty or going to trial?

18         THE DEFENDANT:  Yes, Ma'am.

19         THE COURT:  Do you feel that you need or want any

20     additional time to discuss those issues with your lawyer before

21     we proceed?

22         THE DEFENDANT:  No, Ma'am, I'm okay.

23         THE COURT:  And Mr. Johnson, have you decided that it

24     is in your own best interest to plead guilty to Count One of

25     the Second Superseding Indictment?

1    THE DEFENDANT:  Yes, Ma'am.

2    THE COURT:  Do you understand that you have a right

3 to plead not guilty to the charges that have been brought

4 against you?

5    THE DEFENDANT:  I understand.

6    THE COURT:  All right.  And if you were to plead not

7 guilty or if you were to continue to maintain your plea of not

8 guilty, you would have the protection of a number of

9 Constitutional Rights.  And I'm going to go through those

10 Rights with you and make sure that you understand them and that

11 you want to waive or give them up by pleading guilty, do you

12 understand that?

13    THE DEFENDANT:  Yes, Ma'am.

14    THE COURT:  So, you have the Right to a speedy and

15 public trial by jury.

16    You have the Right to be presumed innocent unless and

17 until the Government has proved you guilty beyond a reasonable

18 doubt.

19    You have the Right to see and hear all witnesses called to

20 testify against you and the Right to cross examine them.

21    You have the Right to have The Court order any witnesses

22 you have for your defense to appear at trial.

23    You have the right to take the witness stand or not as you

24 choose.  And you cannot be required to take the witness stand

25 and testify.  If you do not take the witness stand and testify,

1    your silence cannot be used against you in any way.

2        Do you understand those rights that I've  just read to

3    you?

4            **THE DEFENDANT:**  Yes, Ma'am, I understand.

5            **THE COURT:**  And do you understand that if you pled

6    guilty and if I accept your plea of guilty, you will be found

7    guilty of RICO Conspiracy, without a trial, and you will have

8    given up those Rights that I just read to you.  Do you

9    understand that?

10           **THE DEFENDANT:**  Yes, Ma'am.

11           **THE COURT:**  Now, is it your desire to give up those

12   Rights in order to plead guilty this afternoon?

13           **THE DEFENDANT:**  Yes, Ma'am.

14           **THE COURT:**  And Mr. Johnson, there are other

15   consequences of pleading guilty that I want to discuss with

16   you.  RICO Conspiracy is a felony and so I want to make sure

17   you understand that if I accept your guilty plea, you will be

18   found guilty of a felony and that could deprive you of a number

19   of valuable civil rights, including the right to vote, if

20   you're in jail.  The right to serve on a jury.  The right to

21   hold public office.  And the right to possess firearms, do you

22   understand that?

23           **THE DEFENDANT:**  Yes, Ma'am, I understand.

24           **THE COURT:**  Okay.  And there are also penalties,

25   potential penalties that go along with a conviction from a

**Plea Hearing**
**Thursday/March 9, 2017**

13

1   guilty plea.  And I want to make sure you understand what those

2   are as well.  The first is jail time.  And under Count One,

3   which charges RICO Conspiracy, there is a maximum penalty of up

4   to life in prison, do you understand that?

5           **THE DEFENDANT:**  Yes, Ma'am.

6           **THE COURT:**  And if you're sentenced to prison, in the

7   federal system there's also something called "Supervised

8   Release", and that's the period of time after you're released

9   from prison, where you would have to follow and obey a number

10  of rules and requirements that pertain to the way you live in

11  the community.  And here there's a maximum period of supervised

12  release of five years, are you aware of that?

13          **THE DEFENDANT:**  Yes, Ma'am, I'm aware.

14          **THE COURT:**  And during that period of supervised

15  release, if you were to violate any of the conditions of

16  supervised release, you could be given additional jail time, do

17  you understand that as well?

18          **THE DEFENDANT:**  Yes, Ma'am.

19          **THE COURT:**  And there are also some economic

20  penalties that go along with a conviction.  One is a fine and

21  the law that you're charged with imposes a maximum fine of

22  $250,000, are you aware of that?

23          **THE DEFENDANT:**  Yes, Ma'am.

24          **THE COURT:**  You understand you will have to pay a

25  special assessment of $100?

**Plea Hearing**
**Thursday/March 9, 2017**

14

 1              THE DEFENDANT:  Yes, Ma'am.

 2              THE COURT:  And there's also something called

 3      "Restitution" and the idea is that as a result of your

 4      wrongdoing, someone was hurt or lost something and I may decide

 5      that you need to make it up to those people, pay them back, you

 6      understand that general concept of restitution?

 7              THE DEFENDANT:  Yes, Ma'am.

 8              THE COURT:  And there's also something called,

 9      "Forfeiture", where I may require you to forfeit or give up

10      certain property to the Government, do you understand that as

11      well?

12              THE DEFENDANT:  Yes, Ma'am.

13              THE COURT:  So, Mr. Johnson, do you understand all of

14      those potential consequences of pleading guilty?

15              THE DEFENDANT:  Yes, Ma'am, I do.

16              THE COURT:  Any questions about any of them?

17              THE DEFENDANT:  No, Ma'am.

18              THE COURT:  And Mr. Kaplovitz, any potential

19      immigration consequences here?

20              MR. KAPLOVITZ:  No, Your Honor.

21              THE COURT:  Mr. Johnson, are you on probation or

22      parole in any other matter right now?

23              THE DEFENDANT:  No.

24              THE COURT:  So, just having discussed that one of the

25      consequences of pleading guilty is jail time, let me just

1　briefly give you an overview of how it is that I will go about

2　determining your sentence.  And in doing that, I'm going to

3　consider a number of things.  I'm going to first consider the

4　sentencing guideline range and that's a range that I will

5　calculate.  And that range combines the seriousness of your

6　offense with your criminal background which gives me a

7　recommended range of sentences.

8　　　　For example, you probably saw in your Plea Agreement

9　ranges of 168 to 210 months and 121 to 151 months.  Do you

10　understand that general concept of how the sentencing

11　guidelines work?

12　　　　　　　　**THE DEFENDANT:**  Yes, Ma'am.

13　　　　　　　　**THE COURT:**  And in addition to the guidelines, those

14　are advisory, it's not the only thing I consider, there are a

15　number of other factors I'll consider and they have to do with

16　the purposes of sentencing and they include:

17　　　　Your history and characteristics.  The nature and

18　seriousness of the charged offense.  Deterrence.  Punishment.

19　Promoting respect for the law and protection of the public.

20　And I want to make sure you understand that after I consider

21　all of those factors and the sentencing guidelines and I hear

22　from you, I could sentence you within the guideline range that

23　I calculate, or, I could sentence you above that range or below

24　that range, do you understand that?

25　　　　　　　　**THE DEFENDANT:**  Yes, Ma'am.

1          **THE COURT:**  And have you reviewed the worksheets that

2    are attached to your Rule 11 Plea Agreement that set forth how

3    the guidelines might apply in this case?

4          **THE DEFENDANT:**  Yes, Ma'am, I have.

5          **THE COURT:**  And have you discussed with Mr. Kaplovitz

6    how the sentencing guidelines might apply in your case?

7          **THE DEFENDANT:**  Yes, Ma'am.

8          **THE COURT:**  Do you feel that you need or want any

9    additional time to discuss the sentencing guidelines with your

10   counsel?

11         **THE DEFENDANT:**  No, Ma'am.

12         **THE COURT:**  Do you feel that you understand how

13   they're going to apply here or how they might apply here?

14         **THE DEFENDANT:**  Yes, Ma'am.

15         **THE COURT:**  And do you have any questions about them?

16         **THE DEFENDANT:**  No, Ma'am.

17         **THE COURT:**  You understand I will be the one that

18   ultimately determines your sentence?

19         **THE DEFENDANT:**  Yes, Ma'am.

20         **THE COURT:**  And do you also understand that parole

21   has been abolished in the federal system, which means that if I

22   sentence you to prison, you will not be released on parole?

23         **THE DEFENDANT:**  Yes.

24         **THE COURT:**  And when we started, Mr. Graveline

25   advised you of the charge that's been filed against you.  Have

 1   you also reviewed the Second Superseding Indictment?

 2             **THE DEFENDANT:**  Yes, Ma'am.

 3             **THE COURT:**  And have you discussed the charges with

 4   Mr. Kaplovitz?

 5             **THE DEFENDANT:**  Yes, Ma'am.

 6             **THE COURT:**  And has he also explained to you the

 7   nature of the charges, to your satisfaction?

 8             **THE DEFENDANT:**  Yes, Ma'am.

 9             **THE COURT:**  And when Mr. Graveline was explaining the

10   offense to you, he described the elements of RICO Conspiracy.

11   But I'm going to have him do that again.  I'm going to have him

12   explain to you the essential elements of that offense and I'm

13   going to have him do that because those are the things that the

14   Government would have to prove, beyond a reasonable doubt,

15   before you could be found guilty.  And I want to make sure you

16   understand those elements and that you do believe the

17   Government would be able to prove them, beyond a reasonable

18   doubt.  Do you understand that?

19             **THE DEFENDANT:**  Yes, Ma'am.

20             **THE COURT:**  All right.  So, Mr. Graveline, if you

21   would, again, just advise Mr. Johnson of the essential elements

22   of the offense, Count One, RICO Conspiracy.

23             **MR. GRAVELINE:**  Yes, Your Honor.  That as identified

24   in the Second Superseding Indictment, The Castro Enterprise

25   existed in the Eastern District of Michigan and elsewhere.

1      That this Enterprise engaged in or had some effect on

2   interstate commerce.  That the defendant was associated with

3   this Enterprise.  That at some point between April, 2011 and

4   December 11th, 2014, the defendant and one other person reached

5   an agreement or came to an understanding to conduct or

6   participate in the affairs of this Enterprise through a pattern

7   of racketeering activity.  And the final element is the

8   defendant voluntarily joined in this agreement or

9   understanding.

10         **THE COURT:**  Thank you.

11      And Mr. Johnson, do you understand those elements that the

12   lawyer for the Government just explain to you?

13         **THE DEFENDANT:**  Yes, Ma'am.

14         **THE COURT:**  And there have been a lot of documents, a

15   lot of material that have been produced in this case.  Have you

16   reviewed the discovery material the Government has provided or

17   otherwise learned how the facts the Government could prove at

18   trial would satisfy those essential elements of the offense of

19   RICO Conspiracy?

20         **THE DEFENDANT:**  Yes, Ma'am.

21         **THE COURT:**  And you told me that you reviewed the

22   Second Superseding Indictment.  You discussed the charges with

23   your lawyer.  We've discussed the charges again here today.

24   After doing all of that, do you fully understand the charge

25   that's been brought against you?

Plea Hearing
Thursday/March 9, 2017

19

1          THE DEFENDANT:  Yes, Ma'am.

2          THE COURT:  Is that still the charge that you intend

3    to plead guilty to?

4          THE DEFENDANT:  Yes, Ma'am.

5          THE COURT:  And do you understand that you're

6    pleading guilty pursuant to the Rule 11 Plea Agreement that you

7    signed today?

8          THE DEFENDANT:  Yes, Ma'am.

9          THE COURT:  You told me that you had a chance to

10   review that Agreement and to discuss it with Mr. Kaplovitz; is

11   that right?

12         THE DEFENDANT:  Yes, Ma'am.

13         THE COURT:  Did you have a chance to ask

14   Mr. Kaplovitz any and all questions that you had about the Rule

15   11 Plea Agreement?

16         THE DEFENDANT:  Yes, Ma'am.

17         THE COURT:  Was he able to answer those questions for

18   you?

19         THE DEFENDANT:  Yes, Ma'am.

20         THE COURT:  And do you feel that you need or want any

21   more time to discuss the terms of this Agreement with him

22   before we continue?

23         THE DEFENDANT:  No, Ma'am.

24         THE COURT:  Do you want to go ahead with this

25   Agreement?

1    **THE DEFENDANT:**  Yes, Ma'am.

2    **THE COURT:**  And counsel, before we get too far into

3  the Agreement, let me just ask you, I was looking at page --

4  well, it doesn't really have a page number.  It's the last page

5  of Worksheet "B", where you tally up the units?

6    **MR. KAPLOVITZ:**  Yes, Your Honor.

7    **MR. GRAVELINE:**  Yes, there's a mistake there.  Under

8  6, that should read, "Five units", Your Honor.

9    **THE COURT:**  Okay.  And does that change any of the

10  guideline ranges?

11    **MR. GRAVELINE:**  It does not.  It still adds four

12  levels, so, if there's three and a half to five units, that

13  adds four levels and that's what we've done.  That was just a

14  typo.

15    **MR. KAPLOVITZ:**  The word "unit" should be "levels"?

16    **MR. GRAVELINE:**  That's correct.

17    **THE COURT:**  Right.  Okay.  So, all the calculations,

18  though, stay the same.

19    **MR. GRAVELINE:**  Yes, Your Honor.

20    **THE COURT:**  Okay.  Very good.

21    Mr. Johnson, are you relying on the terms and promises

22  that are set forth in the Rule 11 Plea Agreement in making your

23  decision to plead guilty?

24    **THE DEFENDANT:**  Yes, Ma'am.

25    **THE COURT:**  And because you are, I want to make sure

1   that you fully understand all of these terms.  So, I'm going to

2   ask the lawyer for the Government if you would please explain

3   to Mr. Johnson the essential terms of the Rule 11 Plea

4   Agreement.

5            **MR. GRAVELINE:**  Yes, Your Honor.

6        Mr. Johnson has agreed to plead guilty to Count One, RICO

7   Conspiracy.  The parties have a disagreement on the proper

8   scoring of the guidelines, in this case.  The Government

9   believes that a three-point enhancement under U.S. Sentencing

10  Guideline 3A1.1, that is the Hate Crime Enhancement, is

11  applicable.  The defense disagrees on that.  We agree that The

12  Court will determine that at the time of the sentencing.

13       If The Court agrees with the Government, the defendant's

14  guidelines it would be 168 to 210 months.  If The Court agrees

15  with the scoring as put forth by the defendant, his guideline

16  would be 121 to 151.

17       The parties have agreed that the total sentence of

18  imprisonment may not exceed the top of the sentencing

19  guidelines based upon which guideline The Court eventually

20  determines to be the correct guideline in this case.

21       The Court may impose any term of supervised release up to

22  the statutory maximum term which, in this case, is five years.

23  The defendant has to pay a $100 special assessment.  The

24  parties have agreed that restitution will be determined at the

25  time of the sentencing.

**Plea Hearing**
**Thursday/March 9, 2017**

22

```
 1        The defendant agrees to forfeit any property that the
 2   Government identifies as being taken from any of the robberies,
 3   in this case, specifically:  Firearms, U.S. currency, foreign
 4   currency, jewelry, electronic computers, laptops, cameras,
 5   electronic equipment, or, other personal property taken from
 6   any of the victims in this case.
 7        If the defendant decides to withdraw his plea or attempt
 8   to withdraw his plea and The Court agreed to allow him to
 9   withdraw his plea at a later time, the defendant waives his
10   Right under the Federal Rules of Evidence and we could use any
11   statement that he says during this Plea Agreement against him
12   in any future proceeding.
13        As long as The Court decides to impose a sentence less
14   than the top of the guidelines as determined by The Court, he
15   may not withdraw from this Agreement.  And he also waives his
16   right to appeal any such sentence.  If the defendant is
17   sentenced within the guideline range, the Government waives any
18   right it may have to appeal the defendant's sentence.
19        I believe that is the relevant portions of the Rule 11
20   Plea Agreement, Your Honor.
21             THE COURT:  Thank you.
22        And Mr. Kaplovitz, do you agree with the terms of the Rule
23   11 Plea Agreement as just stated by Mr. Graveline?
24             MR. KAPLOVITZ:  I do, Your Honor.  I've reviewed it
25   carefully and I believe it's accurate.
```

Plea Hearing
Thursday/March 9, 2017

23

1          THE COURT:  Anything you'd like to add, for the

2    record?

3          MR. KAPLOVITZ:  No, Your Honor.

4          THE COURT:  And do you believe that Mr. Johnson fully

5    understood the Agreement before he signed it?

6          MR. KAPLOVITZ:  Yes, Your Honor.

7          THE COURT:  And Mr. Johnson, do you understand the

8    terms of this Plea Agreement as just explained by the lawyer

9    for the Government?

10          THE DEFENDANT:  Yes, Ma'am.

11          THE COURT:  And do you agree with the terms of the

12    Agreement as he just explained them?

13          THE DEFENDANT:  I agree, Ma'am.

14          THE COURT:  And he gave a very thorough summary.  I

15    just want to mention a few of the provisions, again, that have

16    to deal with your sentence because we've been talking about

17    that and it is a little bit technical.

18          So, if you have a copy of the Rule 11 Plea Agreement, I'd

19    like you to take a look at Page 8.  And it's Pages 8 and 9 that

20    explains what Mr. Graveline was indicating when he said that

21    you and the Government are not in complete agreement about the

22    sentencing guideline range here.

23          And the Government believes that the guideline range

24    should be 168 to 210 months.  You believe the guideline range

25    should be 121 to 151 months.  And that difference comes from

1  whether there will be an enhancement for this being a hate

2  crime.  Do you understand that differential?

3            **THE DEFENDANT:**  Yes, Ma'am.

4            **THE COURT:**  And you understand that I'll be the one

5  determining whether that enhancement applies or it doesn't

6  apply?

7            **THE DEFENDANT:**  Yes, Ma'am.

8            **THE COURT:**  And after I calculate the guideline

9  range, and I told you earlier, I'll be the one calculating your

10  guideline range.  After I do that, my calculation might be the

11  same as the Government's, 168 to 210 months, or, it might be

12  the same as yours, 121 to 151 months, or, it might be different

13  than both of them, do you understand that?

14            **THE DEFENDANT:**  Yes, Ma'am.

15            **THE COURT:**  And this Agreement at Page 9 explains the

16  ways that my calculation might be different from a party's

17  calculation.  And it explains that if we find out that your

18  criminal history might be higher than as we thought and as

19  reflected in your worksheets, or, if I find that after pleading

20  guilty you've made any false statements to the probation

21  officer, or, there are issues with obstruction of justice or

22  acceptance with responsibility, that might result in my

23  calculating a guideline range higher than the calculations

24  you've done and the Government has done, do you understand

25  that?

1          **THE DEFENDANT:**  Yes, Ma'am.

2          **THE COURT:**  And you understand if my calculation,

3    based on the reasons set forth in this Plea Agreement, result

4    in a higher guideline range, you are agreeing to that guideline

5    range?

6          **THE DEFENDANT:**  Yes, Ma'am.

7          **THE COURT:**  Okay.  And you and the Government in this

8    Agreement at Page 10, and as explained in Pages 8 to 9, you've

9    agreed that there should be a cap or a limit on your sentence.

10   And that cap is the top of the sentencing guideline range that

11   is set forth in the Plea Agreement.

12         And what that means is 210 months, if I have the same

13   calculation as the Government, 151 months if I have the same

14   calculation as you, or, whatever is the top end of the

15   guideline range that I might calculate, do you understand that?

16         **THE DEFENDANT:**  Yes, Ma'am.

17         **THE COURT:**  So, the Agreement you have with the

18   Government is that I will not sentence you above the top end of

19   whatever the guideline range is that I calculate, you

20   understand?

21         **THE DEFENDANT:**  Yes, Ma'am.

22         **THE COURT:**  And if, for some reason, I cannot accept

23   that cap, if I think your sentence should be above the top end

24   of the guideline range that is calculated under this Agreement,

25   I will tell you that I'm rejecting the cap and I'll give you a

1  chance to withdraw back out of the plea, or, continue with the

2  plea, but without the cap, do you understand that?

3          THE DEFENDANT:  Yes, Ma'am.

4          THE COURT:  And do you understand that if you decide

5  not to withdraw your plea, that I could sentence you to more

6  than the cap than you agreed to with the Government, do you

7  understand?

8          THE DEFENDANT:  I understand.

9          THE COURT:  You have any questions about that?

10         THE DEFENDANT:  No, Ma'am.

11         THE COURT:  Do you understand the only way you would

12  be able to back out of the Plea Agreement, once I accept the

13  plea, is if I were to decide to impose a sentence higher than

14  the maximum allowed by this Agreement?

15         THE DEFENDANT:  Yes, Ma'am.

16         THE COURT:  And again, that's either going to be 210

17  months, 151 months, or, the top end of the range that I

18  calculate if it's different from your range and the

19  Government's range, do you understand that?

20         THE DEFENDANT:  Yes, Ma'am.

21         THE COURT:  All right.  Any questions about that?

22         THE DEFENDANT:  No questions.

23         THE COURT:  And then if you look at Paragraph 7,

24  that's what Mr. Graveline was explaining when he talked about

25  your waiving certain rights to appeal.  You understand that

1   you're waiving or giving up your right to appeal the

2   convictions that results from your guilty plea?

3           **THE DEFENDANT:**  Yes, I understand.

4           **THE COURT:**  And under this Agreement, this Plea

5   Agreement, if the sentence that I impose is not more than the

6   maximum allowed by this Agreement, you're also waiving or

7   giving up your right to appeal the sentence, do you understand

8   that?

9           **THE DEFENDANT:**  Yes.

10           **THE COURT:**  And this Agreement explains that you are

11   not waiving your right to bring an ineffective assistance of

12   counsel claim if you were to file a proper collateral

13   proceeding, do you understand that?

14           **THE DEFENDANT:**  Yes, Ma'am.

15           **THE COURT:**  Okay.  So, Mr. Johnson, there's a lot of

16   information in this Plea Agreement.  Have you had the

17   opportunity to discuss this Agreement with your lawyer to your

18   satisfaction?

19           **THE DEFENDANT:**  Yes, Ma'am.

20           **THE COURT:**  And do you have any final questions about

21   it?

22           **THE DEFENDANT:**  No, Ma'am.

23           **THE COURT:**  Now that we've gone through it in some

24   more detail, do you still want to go forward with this Rule 11

25   Plea Agreement?

1      THE DEFENDANT:  Yes, Ma'am.

2      THE COURT:  And other than what is contained in this

3  Agreement, has anyone made any other or different promises or

4  assurances to you of any kind in an effort to get you to enter

5  a plea of guilty in this case?

6      THE DEFENDANT:  No, Ma'am.

7      THE COURT:  Has anyone told you that you will be

8  treated leniently, meaning, that I will go easy on you or that

9  you will be put on probation or that you will receive any

10 specific sentence in return for pleading guilty to Count One of

11 the Second Superseding Indictment?

12      THE DEFENDANT:  No, Ma'am.

13      THE COURT:  Has anyone tried to force you to plead

14 guilty by any mistreatment, by any pressure, any duress, or any

15 threats made upon you in any way?

16      THE DEFENDANT:  No, Ma'am.

17      THE COURT:  Then Mr. Johnson, tell me how are you

18 going to plead to the charge of RICO Conspiracy?

19      THE DEFENDANT:  Guilty.

20      THE COURT:  And are you entering this plea of guilty

21 freely and voluntarily because, in fact, you are guilty and it

22 is your choice to plead guilty?

23      THE DEFENDANT:  Yes, Ma'am.

24      THE COURT:  I want you to go back to the Plea

25 Agreement and look at Paragraph 1C which begins on Page 3 and

**Plea Hearing**
**Thursday/March 9, 2017**

1    goes all the way through Page 7.  And it's titled, "Factual

2    Basis for the Guilty Plea."  And was that one of the sections

3    that you reviewed when you indicated you've reviewed the Plea

4    Agreement?

5            THE DEFENDANT:  Yes, Ma'am.

6            THE COURT:  And are the facts that are set forth in

7    that paragraph, at Pages 3 to 7, are those facts truthful and

8    accurate?

9            THE DEFENDANT:  Yes, Ma'am.

10           THE COURT:  And do those facts truthfully and

11    accurately describe your involvement and conduct?

12           THE DEFENDANT:  Yes, Ma'am.

13           THE COURT:  And do those facts truthfully and

14    accurately describe the conduct of the other people who were

15    referenced in Pages 3 to 7?

16           THE DEFENDANT:  Yes, Ma'am, to the best of my

17    knowledge.

18           THE COURT:  And did this conduct occur from April of

19    2011 through December of 2014?

20            THE DEFENDANT:  To the best of my knowledge.

21           THE COURT:  When were you involved?

22           THE DEFENDANT:  October 31st, 2014.

23           THE COURT:  October 31, 2014 through December of 2014

24    or just October?

25           THE DEFENDANT:  Just October, Ma'am.

1          THE COURT:  Well, I guess from October 31, 2014 'til

2     when?

3          THE DEFENDANT:  To December, 2014.

4          MR. GRAVELINE:  Your Honor, if I may, just to be

5     clear.  The factual basis of the Rule 11, and Mr. Johnson just

6     said he agreed with it, puts Mr. Johnson as involved from

7     August of 2014 through December of 2014.

8          I understand that Mr. Johnson is going to be admitting to

9     certain facts that occurred on October 31st, 2014.  But I

10    believe to be accurate, and I'd like to ask Mr. Johnson this,

11    did this involvement extend from August of 2014 through

12    December, 2014?

13          THE DEFENDANT:  August to October, sir.

14          MR. GRAVELINE:  Okay.  So, from August through

15    October?

16          THE DEFENDANT:  Yes, sir.

17          THE COURT:  All right.  August, 2014 through October,

18    2014?

19          THE DEFENDANT:  Yes, Ma'am.

20          THE COURT:  All right.  And did some of this conduct

21    take place in the Eastern District of Michigan as set forth in

22    this factual basis for the guilty plea?

23          MR. GRAVELINE:  Maybe I could ask this question, Your

24    Honor.  Mr. Johnson, have you reviewed the discovery in this

25    matter?

1          THE DEFENDANT:  Yes, sir.

2          MR. GRAVELINE:  All right.  Did you ever personally

3    come to the Eastern District of Michigan?

4          THE DEFENDANT:  No, sir.

5          MR. GRAVELINE:  Did other people who were involved in

6    this Enterprise come to the Eastern District of Michigan, based

7    upon your review of the discovery?

8          THE DEFENDANT:  Based upon my review, I guess they

9    did, sir.

10          MR. GRAVELINE:  All right.  But you did not

11   personally come?

12          THE DEFENDANT:  Me, personally, I've never been here

13   to Michigan.

14          MR. GRAVELINE:  Okay.  Prior to your arrest.  And

15   then you were brought here, correct?

16          THE DEFENDANT:  Correct.

17          MR. GRAVELINE:  I guess I would put this to

18   Mr. Kaplovitz.  Would we stipulate that the Enterprise had

19   activities within the Eastern District of Michigan?

20          MR. KAPLOVITZ:  Yes, Your Honor, I so stipulate.

21          THE COURT:  And I understand, Mr. Johnson, the

22   factual basis for the guilty plea that's set forth in

23   Paragraphs 3 through 7 is describing conduct that may have

24   occurred during a time that you weren't personally involved,

25   but is describing conduct of the others that you were involved

1    with.  And that's why you indicated, to the best of your

2    understanding, this information is truthful and accurate?

3            **THE DEFENDANT:**  To the best of my knowledge, Ma'am,

4    it's truthful and accurate.

5            **THE COURT:**  All right.  And I understand you've not

6    been in Michigan, so the conduct that you were involved in took

7    place in other states?

8            **THE DEFENDANT:**  Yes, Ma'am.

9            **THE COURT:**  And were you part of the Castro

10   Enterprise that is described in the factual basis for the

11   guilty plea?

12           **THE DEFENDANT:**  Yes, Ma'am.

13           **THE COURT:**  And were you associated with that group?

14           **THE DEFENDANT:**  Yes, Ma'am.

15           **THE COURT:**  And do you know or have you come to know

16   or did you learn that when you were involved that between the

17   April, 2011 through December, 2014 time frame, that two or more

18   persons reached an Agreement or came to an understanding to

19   conduct or participate in the affairs of the Castro Enterprise

20   through a pattern of racketeering activity that is set forth in

21   Pages 3 through 7 of the factual basis?

22           **THE DEFENDANT:**  Yes, Ma'am.

23           **THE COURT:**  And did you voluntarily and intentionally

24   join in the agreement or understanding, either at the time it

25   was first reached, or at some later time while it was still in

1    existence?

2             THE DEFENDANT:  Yes, Ma'am.

3             THE COURT:  And did you specifically intend to

4    otherwise participate in the affairs of the Castro Enterprise?

5             THE DEFENDANT:  Yes, Ma'am.

6             THE COURT:  And then are these facts that are set

7    forth in Paragraph 1C at Pages 3 to 7 of the Rule 11 Plea

8    Agreement, are these the things that you did that make you

9    believe you're guilty of RICO Conspiracy?

10            THE DEFENDANT:  Yes, Ma'am.

11            THE COURT:  And Mr. Graveline, anything further that

12   you'd like to inquire?

13            MR. GRAVELINE:  Not of Mr. Johnson, Your Honor.

14       I do want to point out one thing, on Page 7 of the Rule

15   11, and normally a typo involving this would not raise to the

16   level of note.  But in the first full paragraph on Page 7, when

17   it talks about, "In a robbery on October 16, 2014", it's the

18   first full paragraph, second line, it says, "On October 16th,

19   2014, Olaya, defendant . . .", then there's no comma, and then,

20   "Scott".  That could be read, "Olaya, Defendant Scott and

21   another individual."

22       It's actually -- there should be a comma after

23   "Defendant".  So, that should read, "Mr. Olaya, defendant,

24   i.e., Mr. Johnson, Scott, and another individual confronted

25   someone."

1      So, just to be clear, that Mr. Johnson is agreeing he was

2   present on October 16th during a robbery that occurred in West

3   Babylon, New York.

4           **THE COURT:**  So, you just want to make that Defendant

5   Johnson?

6           **MR. GRAVELINE:**  Yes, or you could just put a comma

7   right after, "Defendant".  For example, that's how it reads in

8   the second line of that page when they're talking about a

9   different robbery that occurred in Fayetteville, Georgia.  As

10  you can see up above, it says, "Later, Olaya, Defendant, and

11  Scott . . ."

12          **THE COURT:**  You see that, Mr. Johnson, on Page 7?

13  Mr. Olaya is a defendant, Mr. Scott's a defendant, and you're a

14  defendant.  So, to make clear that that reference to defendant

15  is a reference to you, we're going to add a comma after,

16  "Defendant".  Do you see that portion that we're talking about?

17          **THE DEFENDANT:**  Yes, Ma'am.

18          **THE COURT:**  And Mr. Kaplovitz, do you agree with that

19  edit?

20          **MR. KAPLOVITZ:**  Yes, Your Honor.

21          **THE COURT:**  And Mr. Johnson, you agree to that?

22          **THE DEFENDANT:**  Yes, Ma'am.

23          **THE COURT:**  All right.  I'm going to add that in.

24  I'll just have the parties initial that when we complete the

25  proceeding today.

1      All right.  Mr. Graveline, anything further then?

2           **MR. GRAVELINE:**  The only other thing I would ask is

3   that Mr. Johnson, when you were associated with this group or

4   Enterprise, the Castro Enterprise, did you agree that other

5   people would take steps in order to commit a pattern of

6   racketeering activity, in this case, robbery?  Did you agree

7   that some people would commit robberies as part of your

8   association with this Enterprise?

9           **THE DEFENDANT:**  Yes, sir.

10          **THE COURT:**  And did you take active steps either

11  before, during, or after those robberies to assist in those

12  robberies?

13          **THE DEFENDANT:**  Yes, I did.

14          **MR. GRAVELINE:**  Thank you.  No further questions.

15          **THE COURT:**  All right.  Counsel, do you believe a

16  factual basis for the plea has been adequately established.

17  Mr. Graveline?

18          **MR. GRAVELINE:**  Yes, Your Honor.

19          **THE COURT:**  Mr. Kaplovitz?

20          **MR. KAPLOVITZ:**  Your Honor, I'm satisfied.

21          **THE COURT:**  All right.  Mr. Johnson, now after having

22  heard a recitation of your rights, the consequences of pleading

23  guilty, and having been advised about the penalties that could

24  be imposed, including prison time, is it still your intention

25  to plead guilty?

**Plea Hearing**
**Thursday/March 9, 2017**                                              36

```
 1            THE DEFENDANT:  Yes, Ma'am.

 2            THE COURT:  And do you still want me to accept your

 3    plea of guilty?

 4            THE DEFENDANT:  Yes, Ma'am.

 5            THE COURT:  Counsel, are you satisfied the Court have

 6    complied with all provisions of Rule 11 of the Federal Rules of

 7    Criminal Procedure.  Mr. Graveline?

 8            MR. GRAVELINE:  Yes, Your Honor.

 9            THE COURT:  Mr. Kaplovitz?

10            MR. KAPLOVITZ:  Yes, Your Honor.

11            THE COURT:  I do believe that Mr. Johnson understands

12    what is at stake, both in terms of the benefits and risks of

13    proceeding to trial, and proceeding under the Rule 11 Plea

14    Agreement.  I do not see any indication of undisclosed promises

15    that are motivating his decision.  And I do not see any

16    indication of threats or coercion.

17        So, having had the opportunity to address these issues

18    with Mr. Johnson, it is the finding of The Court in the case of

19    United States versus Justin Johnson, that Mr. Johnson is fully

20    competent and capable of entering an informed plea.  That he is

21    aware of the nature of the charges and the consequences of the

22    plea.  And that his plea of guilty is a knowing and voluntary

23    plea, supported by his own statement of facts and those adopted

24    by him that are set forth in Pages 3 to 7 under Paragraph 1C of

25    the Rule 11 Plea Agreement, which contained all of the
```

1  essential elements of the offense.

2      So, Mr. Johnson, I am going to accept your guilty plea.

3  You are now adjudged guilty of the RICO Conspiracy offense

4  charged in the First Superseding Indictment -- I'm sorry, the

5  Second Superseding Indictment.

6      I'm going to take the Rule 11 Plea Agreement under

7  advisement.  I'm going to refer this matter to the Probation

8  Department.  They're going to prepare for me a presentence

9  report and that's the report that I will use to evaluate the

10  factors that I mentioned to you earlier.

11      You'll be interviewed for that report.  Mr. Kaplovitz

12  could be with you, during that interview, if you wish.  You

13  will receive a copy of the report.  You'll have an opportunity

14  to make any objections that you have to The Court.  And you'll

15  also have the opportunity, if you wish, to speak at the

16  sentencing.  And I'm going to schedule this matter for

17  sentencing for July 19th at 11:00 a.m.

18      And I'll just remind counsel that if you wish to have The

19  Court consider a sentencing memo, I do require those to be

20  filed no later than one week prior to the sentencing.  So, no

21  later than July 12th.  I will continue the order of detention.

22      And with that, is there anything further then that we need

23  to do on this matter today.  From the Government?

24          **MR. GRAVELINE:**  No, Your Honor.

25          **MR. KAPLOVITZ:**  Nothing further.  Just what time is

**Plea Hearing**
**Thursday/March 9, 2017**

38

1    that sentencing, Your Honor.

2              **THE COURT:**  It will be at 11:00 a.m.

3         **MR. KAPLOVITZ:**  Thank you, Your Honor.

4              **THE COURT:**  Thank you.  We'll see you in July.

5         (Whereupon proceedings concluded at 1:55 p.m.)

6                        -     -     -

```
 1

 2

 3

 4                           -    -    -

 5               C E R T I F I C A T I O N

 6          I, Nefertiti A. Matthews, official court reporter

 7     for the United States District Court, Eastern District of

 8     Michigan, Southern Division, appointed pursuant to the

 9     provisions of Title 28, United States Code, Section 753,

10     do hereby certify that the foregoing is a correct

11     transcript of the proceedings in the above-entitled cause

12     on the date hereinbefore set forth.

13          I do further certify that the foregoing

14     transcript has been prepared by me or under my direction.

15

16     Date: April 17, 2017

17

18     s:/Nefertiti A. Matthews
       Nefertiti A. Matthews,
19     Official Court Reporter

20                           -    -    -

21

22

23

24

25
```